UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, AND 401(K) SAVINGS PLAN,<br><br>Plaintiffs,<br><br>-against-<br><br>SPRAY IN PLACE SOLUTIONS, LLC and ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | 24 CV 2568 (KAM)(PK) |

**PLAINTIFFS' RULE 56.1 STATEMENT**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, the Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan (collectively, the "Funds"), submit the following statement of material facts, as to which they contend there is no genuine issue to be tried, in support of their motion for summary judgment in accordance with the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the Eastern District of New York.

## I. Parties

1. Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan (collectively, the "Local 1 Funds") are the Trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c) and ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Funds are administered at 50-02 Fifth Street, Second

Floor, Long Island City, New York 11101. *See* Declaration in Support of Rebecca W. Richardson ("Richardson Decl."), ¶ 3; Declaration in Support of Wendy Salvatierra ("Salvatierra Decl."), ¶ 4.

2. Plaintiff Plumbers Local Union No. 1 Welfare Fund is the designated Collection Agent for Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union") and the Plumbing Industry Promotion Fund of New York City. The Union is, and at all relevant times was, a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. The Union represents, and at all relevant times represented, employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. § 142. *See* Salvatierra Decl. ¶ 2; Declaration in Support of Rebecca W. Richardson ("Richardson Decl.") ¶ 4.

3. Defendant, Spray in Place Solutions, LLC ("SIPS") is a foreign limited liability company organized under the laws of the State of Florida and duly authorized to conduct business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 602(5) and 1145, and was and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. SIPS maintains its principal place of business at 45 Knickerbocker Avenue, Suite 1, Bohemia, New York 11716. Richardson Decl., ¶ 5.

4. The New York Department of State Division of Corporations lists "THE LLC" with an address of 45 Knickerbocker Avenue, Suite 1, Bohemia, New York 11716, as the post office address to which the Secretary of State shall mail a copy of any process against the Company served upon the Secretary of State by personal delivery. *See* Richardson Decl. ¶ 6, Ex. 1; Defendant's Answer to Complaint ("Answer") (Docket No. 13) ¶ 7.

5. Upon information and belief, Jeffrey Sausele is the president of SIPS and resides at 554 Boxwood Drive, Shirley, New York 11967. *See* Richardson Decl. ¶ 7.

6. Upon information and belief, SIPS performs "trenchless pipe restoration" using "spray-in-place pipe (SIPP)" technology to "rehabilitate" "like new pipe with an added 75 year engineered life expectancy" and has spent "30 years in the plumbing industry." *See* Richardson Decl. ¶ 8, Ex. 2.

7. Defendant Atlantic Specialty Insurance Company ("ASIC," together with SIPS, the "Defendants") is a corporation incorporated under the laws of the State of New York and authorized to do business within the insurance industry in the State of New York. ASIC has its principal place of business located at One State Street Plaza, Fl 31, New York, NY 10004. *See* Richardson Decl. ¶ 9; Answer ¶ 9.

## II. Defendants' Obligation to the Plaintiffs

8. On or about November 26, 2019, SIPS executed a renewal agreement as a signatory to the Union's Mechanical Equipment and Service Division Collective Bargaining Agreement detailing the terms and conditions for certain mechanical equipment servicing work within the City of New York covering the period October 1, 2019 through December 31, 2022 (the "MES Agreement"). *See* Salvatierra Decl. ¶ 5, Ex. 1.

9. The MES Agreement requires that any entity bound to the agreement remit contributions to the Funds for all hours of covered work performed by its employees. *See* Salvatierra Decl. ¶ 6, Ex. 2, Arts. III, IV.

10. The MES Agreement provides that "[a]ny entity wishing to abrogate this Agreement must notify both the Association and the Union in writing by regular and express delivery mail a minimum of one hundred and eighty (180) days prior to the expiration date of this Agreement." *See* Salvatierra Decl. ¶ 7, Ex. 2, Article XVI.

11. The 2019-2022 MES CBA renewal agreement states, "[t]he undersigned Plumbing Contractor and individual signatory agree that the Collective Bargaining Agreement to which they shall be bound shall continue in effect until and including December 31, 2022 and during each year thereafter unless on or before the thirtieth (30th) day of June 2022, on or before the thirtieth (30th) day of June of any year thereafter, written notice of termination or proposed changes shall have been served by either party on the other party via certified or registered mail." *See* Salvatierra Decl. ¶ 8, Ex. 1.

12. On June 16, 2022, the Union informed the Funds that SIPS served written notice of intent to abrogate and the Union acknowledged this request on June 29, 2022. As a result, SIPS remained bound to the 2019-2022 MES Agreement through the expiration of its written term—December 31, 2022. *See* Salvatierra Decl. ¶ 9, Ex. 11.

13. Accordingly, at all relevant times, Defendant was bound to a CBA with the Union. *See* Salvatierra Decl. ¶ 10.

14. Each of the individual Plaintiff Funds are governed by a trust agreement. *See* Salvatierra Decl. ¶ 11, Exs. 3, 4, and 5.

15. The Trust Agreements are incorporated by reference in the CBA and are binding upon SIPS. *See* Salvatierra Decl. ¶ 12, Ex. 2, Art. XV.

16. The Local 1 Trust Agreements permit the Local 1 Funds to establish policies, rules, and procedures to collect unpaid contributions to the Funds. *See* Salvatierra Decl. ¶ 13, Exs. 3-5, Art. VI, Sec. 6.

17. Pursuant thereto, at a meeting held on June 24, 2021, the Trustees of the Local 1 Funds adopted a Policy for Collection of Delinquent Fringe Benefit Employer Contributions (the "Local 1 Fringe Benefit Collection Policy") and Joint Policy for Collection of Delinquent Employee Contributions and Participant Amounts ("401k Collection Policy," together with the Local 1 Fringe Benefit Collection Policy, the "Local 1 Collection Policies"). *See* Salvatierra Decl. ¶ 14, Exs. 6(a), (b); 7(a), (b).

18. The CBAs, Trust Agreement, and Collection Policies, require SIPS to submit reports ("remittance reports") to the Funds detailing the number of hours of all plumbing work and other specified work performed on behalf Defendant within the trade and geographical jurisdiction of the Union ("Covered Work") performed by its employees, as well as the corresponding benefit contributions to the Funds and to remit other specified amounts, including Union dues withheld from its employees' pay to the Funds in connection with Covered Work, no later than the twentieth (20th) day of the month following the month in which the hours were worked. *See* Salvatierra Decl. ¶ 15, Ex. 2, Arts. II, III, IV, VIII-X; Exs. 3-5, Art. V I; Exs. 6-7, Art. II.

19. According to the CBA, "[c]ommencing with the effective dates of this Agreement [October 1, 2019], the Employer agrees to pay to and on behalf of his/her Journeymen the rates set forth in Table No. 1. The Employer also agrees to pay to and on behalf of the Helpers the rates set forth in Table No. 2." *See* Salvatierra Decl. ¶ 16, Ex. 2, Art. III. The Tables referenced explicitly include hourly wages *and hourly fringes* as a compensation package. *Id.*

20. The CBA further states, "[t]he Employer agrees, in addition to wages, to pay on behalf of each Journeyman and Helper the fringe benefits set forth in Tables 1 and 2." *Id.* ¶ 17, Ex. 2, Art., Art. IV.

21. Covered Work defined under the terms of the CBA includes but is not limited to "Any repair and/or replacement of the present plumbing system at commercial sites and/or residential buildings." *See id.* ¶ 18, Ex. 2, Art. II, Rule 7(B).

22. Contributions are calculated by taking the number of hours of Covered Work performed during the reporting period and multiplying said hours by the applicable contribution rates set forth in the CBAs. *See id.* ¶ 19, Ex. 2, Arts. III-IV.

23. The CBAs and the Collection Policies require SIPS to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with its contribution obligations to Plaintiffs. *See* Salvatierra Decl., Ex. 2, Art. XIV; Ex. 6, Art. IV; Ex. 7, Art. V. The CBAs specifically state, "[SIPS] agrees to keep its labor payrolls and job and time books and comprehensive books available for joint inspection by representatives of the Union and the Association, and the accountant of the Joint Plumbing Industry Board, who shall be permitted to examine same to. . . check the Fringe Benefits. . . ." *See id.* ¶ 20, Ex 2, Art. XIV.

24. The Collection Policies also state, "The Funds shall conduct a dual audit policy comprised of a random selection process as well as a targeted system." *See* Salvatierra Decl. ¶ 21, Ex. 6, Art. IV, ¶ 1; Ex. 7, Art. V, ¶ 1. The Collection Policies state further that, "The Board and the Collections Committee, or its designees, shall have discretion in determining how many employers shall be randomly audited and which employers will be targeted for audit in each year." *Id.*

25. Under the documents and instruments governing the Local 1 Funds, including the CBAs, Trust Agreements, and Local 1 Collection Policies, employers whose contributions are delinquent are liable to the Local 1 Funds for the amount of delinquent contributions, interest thereon at the rate of ten percent (10%) *per annum,* plus liquidated damages equal to twenty percent (20%) of the delinquent contributions, and attorneys' fees and costs. *See id.* ¶ 22, Ex. 2, Art. VI; Exs. 3-5, Art. VI, Sec. 6; Ex. 6, Art. 2, ¶ 6; Ex. 7, Art. III.B.2.

## III. <u>ASIC's Obligation to the Plaintiffs</u>

26. On or about July 1, 2020, ASIC issued Bond No. 810002719 (the "Bond") guaranteeing the payment of all benefits owed in connection with all Covered Work performed by SIPS' employees to the Funds up to the amount of $7,000. *See* Salvatierra Decl. ¶ 37, Ex. 8.

27. In or around February 18, 2021, ASIC issued a rider to be attached to the Bond (the "Rider") which increased the amount of the Bond to $21,000. The Rider was received by the funds on or about March 5, 2021. *See* Salvatierra Decl. ¶ 38, Ex. 9.

28. The terms of the Bond stated that the Bond was to remain valid unless and until ASIC notified the Funds of the cancelation of the Bond via certified mail with ninety (90) days' notice. *See* Salvatierra Decl. ¶ 39, Ex. 8.

29. On or about January 2024, the Funds received a notice of cancelation from ASIC via first class mail which stated that the Bond would be canceled on April 8, 2024. *See* Salvatierra Decl. ¶ 40, Ex. 10.

## IV. <u>Defendant's Failure to Remit Contributions to Plaintiffs in accordance with the CBA</u>

30. Plaintiffs, pursuant to the CBA and the Collection Policies, on or about July 21, 2022, engaged their independent auditors at the accounting firm Schultheis & Panettieri LLP

("S&P" or the "Auditor") to conduct a target payroll audit of SIPS for the time period September 1, 2020 through June 30, 2022 (the "Audit"). Salvatierra Decl., ¶ 23; Brusseau Decl. ¶ 3.

31. Based on the Auditor's analysis and comparison of the hours that Defendant's employees performed Covered Work during the period of September 1, 2020 through June 30, 2022, the amount of hours of Covered Work that Defendant reported to Plaintiffs during that period, and the amount of contributions that Defendant remitted to Plaintiff during that period, the auditor issued a report reflecting that Defendant owed a total delinquency to Plaintiffs of at least $46,465.17 in contributions, interest and liquidated damages thereon; ASB-C findings of $3,415.69, and lost earnings of $232.61, interest and liquidated damages thereon; and audit costs of $3,635.50, plus the Plaintiffs' attorneys' fees and costs. *See* Salvatierra Decl. ¶ 24; Brusseau Decl., ¶¶ 5-7, Ex. 1.

32. The Auditor created a preliminary report that was issued to the Defendant on May 16, 2023. *See* Brusseau Decl. ¶ 13, Exs. 3, 4.

33. Upon learning that SIPS' bond securing payments owed to the Funds would be terminated effective April 8, 2024, at a Collections Committee meeting on January 8, 2024, the Trustees of the Funds directed S&P to change the target audit to a closeout audit and expand the period to cover September 1, 2020 through December 31, 2023 (the "Expanded Audit")[1]. *See* Salvatierra Decl. ¶ 25; Brusseau Decl., ¶ 14.

34. SIPS refused to comply with the Expanded Audit. *See* Salvatierra Decl. ¶ 26; Brusseau Decl. ¶ 15; Richardson Decl. ¶¶ 15, 16.

[1] The parties in this litigation eventually stipulated that the Expanded Audit would go through December 31, 2022. Brusseau Decl. ¶ 4; Richardson Decl. ¶ 16.

35. The Plaintiffs brought this litigation to pursue the amounts identified in the Initial Audit, to compel SIPS' compliance with the Expanded Audit, and for the unknown amounts identified in the Expanded Audit. *See* Richardson Decl. ¶ 11.

36. Starting in September 2024, the Parties—Plaintiffs through former collections counsel— negotiated to obtain a stipulation governing the production of documents, including documents related to the Expanded Audit. *See* Richardson Decl. ¶ 14.

37. After extensive negotiations, on March 25, 2025, Plaintiffs and SIPS signed a stipulation for the Production of Audit Documents, under which SIPS was obligated to produce all outstanding documents, submit to the Expanded audit from July 1, 2022 through December 31, 2022, and pay any undisputed amounts owed. *See* Richardson Decl. ¶ 15.

38. On April 2, 2025, the Parties filed a Stipulation for the Production of Audit Documents for the Defendant SIPS to comply with the Expanded Audit for the period September 1, 2020 through December 31, 2022. *See* Richardson Decl. ¶ 16, Ex. 3.

39. On August 4, 2025, the Funds Auditors received the remaining documents needed to complete the Expanded Audit covering the period through December 31, 2022. *See* Brusseau Decl. ¶ 15.

40. Based on the Auditor's analysis and comparison of the hours that Defendant's employees performed Covered Work during the period of September 1, 2020 through December 31, 2022, the amount of hours of Covered Work that Defendant reported to Plaintiffs during that period, and the amount of contributions that Defendant remitted to Plaintiff during that period, the Expanded Audit Report reflected that Defendant owed a total delinquency to Plaintiffs of at least $136,746.57 consisting of i) contributions owed to the Local 1 Funds totaling $69,017.32; ii)

interest on unpaid contributions to the Local 1 Funds totaling $27,170.44[2]; iii) liquidated damages owed to the Local 1 Funds totaling $13,573.05; (iv) contributions owed to the Union totaling $5,497.45; and (v) interest owed thereon totaling $2,192.27; (vi) ASB-C findings of $6,386.31, and lost earnings of $938.53, interest thereon of $2,351.78, liquidated damages of $1,464.97; and audit costs of $8,154.45[3]. Brusseau Decl., ¶¶ 16-18; *id.*, Ex. 2; *see also* Salvatierra Decl. ¶¶ 28, 36, Ex. 12.

41. The Auditor noted that in discussions with SIPS, the employer contact stated that no benefits were reported for certain employees due to purported issues SIPS was having with the Funds' remittance system. *See* Brusseau Decl. ¶ 16. The Fund was never made aware of any issues with its remittance system during the Audit Period, either by SIPS or any other contributing employer, and only has a record of a failed login attempt by SIPS due to an incorrect password that was addressed the same day any time it occurred. The Funds received remittance reports without issue from other contributing employers and from SIPS throughout the Audit Period. Salvatierra Decl., ¶ 29.

42. The Auditor created a report summarizing its findings of the 2018-2022 Audit ("Expanded Audit Report"). Brusseau Decl. ¶ 22; *id.*, Ex. 2; Salvatierra Decl. ¶ 30.

43. On August 12, 2025, after conducting the exit interview, S&P sent draft findings to SIPS. *See* Brusseau Decl. ¶ 19, Exs. 9, 10.

---

[2] The interest as reflected in the Final Report dated August 26, 2025 is less than the interest calculated for the purpose of summary judgment due to the accumulation of additional interest from the date on which the Final Report was issued and accounting for payments made to date for which interest was only calculated through the date of that payment.

[3] The audit costs have increased since the date on which the Final Report was issued due to additional work by the auditor as a result of SIPS providing additional documentation concerning the audit findings during the course of this litigation.

44. Receiving no exceptions to the draft findings, on or around August 26, 2025, S&P sent SIPS a preliminary audit report, providing 10 days from the date of the preliminary audit report to object in writing to the Auditor's findings. *See* Brusseau Decl. ¶ 20, Exs. 11, 12.

45. S&P received no written objections to the Auditor's findings. Brusseau Decl. ¶ 21.

46. On September 12, 2025, S&P issued a final audit report to SIPS. *See* Brusseau Decl. ¶ 23, Exs. 2, 13; Salvatierra Decl. ¶ 31.

47. Pursuant to the Collection Policies that govern the Funds, the cover letter transmitting the revised final Audit Report described in the preceding paragraph instructed SIPS to pay the entire amount within 10 days of the date of the letter. *See* Brusseau Decl., ¶ 24, Ex. 13.

48. No payment was made towards the audit within 10 days of the date of the letter. *See* Salvatierra Decl. ¶ 32; *See* Brusseau Decl. ¶ 25.

49. From April 2, 2025 when the Parties entered the Stipulation for Production of Audit Documents for the Defendants to comply with the Expanded Audit through February 2, 2026, the Plaintiffs worked tirelessly to obtain Defendants' compliance with the fully executed agreed-upon stipulation. The final requirement of the parties' Stipulation for the Production of Audit Documents was met, in that payment of the undisputed amounts owed to Plaintiffs was made and confirmed received by the Plaintiffs, on February 2, 2026. *See* Richardson Decl. ¶ 17. On February 2, 2026, pursuant to the March 25, 2025 stipulation between the Parties, SIPS paid the undisputed amounts in the amount of $12,727.60. *See* Salvatierra Decl. ¶ 33.

50. In April of 2026, the Auditors received additional documentation from Fund Counsel that was provided by SIPS' counsel that detailed the time activities of SIPS further. The Auditors reviewed this time detail to determine whether any findings could be removed from the

Expanded Audit as findings that were attributable to hours of work performed outside the state of New York and therefore outside the geographical jurisdiction of Covered Work under the applicable CBA. *See* Salvatierra Decl. ¶ 34; *See* Brusseau Decl. ¶ 26.

51. Pursuant to this review, the Auditors identified $27,199.49 of findings and related costs that could be removed from the Expanded Audit. *See* Salvatierra Decl. ¶ 35, Ex. 12; Brusseau Decl. ¶ 27.

52. Therefore, the remaining amounts due to the Local 1 Funds pursuant to the Audit less amounts reduced and recovered are $158,553.96 consisting of: $69,017.32 in contributions owed to the Local 1 Funds, interest owed on the total Local 1 Funds contribution amount pursuant to the Audit, updated through October 12, 2026 and accounting for payments made to date, of $30,776.79, liquidated damages thereon of $13,803.46; delinquent contributions owed to the Union totaling $5,497.45, interest thereon totaling $2,450.10, and liquidated damages thereon totaling $1,099.49; and ASB-C findings of $6,386.31, lost earnings of $938.53, interest thereon of $2,351.78, and liquidated damages of $1,464.97; administrative fees of $2,000, and audit costs of $11,382.35; less the $12,727.60 already recovered and the $27,199.49 in findings removed from the Expanded Audit as being contributions and associated interest and liquidated damages attributable to hours of work performed outside the geographical jurisdiction of Local Union No. 1. *See* Salvatierra Decl. ¶ 36, Ex. 12. SIPS also owes the Local 1 Funds attorneys' fees of $51,312.50. *See* Richardson Decl. ¶ 27, Ex. 4.

## IV. <u>Interest, Liquidated Damages, and Professional Fees and Costs</u>

53. When an employer fails to pay all contributions when due, including all amounts owed to the Local 1 Funds and all entities for which the Local 1 Funds act as a collections agent,

the CBAs and Local 1 Fund Collection Policies impose interest at the rate of ten percent (10%) per annum (compounded annually), plus liquidated damages of twenty percent (20%) of the amount owing, plus all reasonable audit and accounting expenses, attorneys' fees, disbursements, and court costs. *See* Salvatierra Decl. ¶ 41, Ex. 2, Art. VI; Exs. 3-5, Art. VI, Sec. 6; Ex. 6(a), Art. II ¶ 6; Ex. 7(a), Art. III.B.2. Interest is calculated from the due date to the date of payment. *Id. at* Exs. 3-5, Art. VI. Further, the Funds are entitled to an assessment of an administrative fee of $100 for every instance in which an employer fails to submit contributions. *See id.* at Ex. 6, Art. II ¶ 6.

54. Accordingly, calculated through October 12, 2026, SIPS is liable to the Local 1 Funds for interest on the delinquent contributions (absent interest on ASB-C findings) for the period September 1, 2020 through December 31, 2022, at the rate of ten percent (10%) per annum (compounded annually) for a total of $33,226.89 and liquidated damages calculated as twenty percent (20%) of the principal delinquency for liquidated damages totaling $14,902.95. *See* Salvatierra Decl. ¶ 42, Ex. 12.

55. Specifically, interest is calculated by multiplying the contributions due per month by the annual interest rate of ten percent (10%) as provided for in the CBA and Local 1 Fund Collection Policies and then dividing that figure by 365 to yield the daily interest rate. For example, for December 2021, the estimated contributions to the Local 1 Funds of $2,065.46 are multiplied by ten percent (10%) interest rate to yield a total yearly interest of $206.55. That figure is then divided by 365 to render the daily interest rate of $0.57. The daily interest rate is then multiplied by the number of days the contributions are late or have been paid late. Here, December 2021 contributions were due on January 20, 2022. Since December 2021 contributions remain outstanding, interest is calculated through the present date, October 12, 2026; therefore, December 2021 contributions are 1,726 days late. The daily interest of $0.57 multiplied by 1,726 days renders

interest of $983.82 on December 2021 contributions. This calculation was conducted for each and every month that contributions were owed from September 1, 2020 through December 31, 2022 for the Local 1 Funds and the Union Assessments the Local 1 Funds act as collections agent for. As detailed above, the Local 1 Funds have recovered $12,727.60 in contributions to date. When amounts were received, they were applied to the oldest principal delinquent contributions and interest was calculated through the date payment was received for those contributions. Therefore, the amounts received from SIPS, as detailed in paragraph 33 of the Declaration in Support of Wendy Salvatierra, were applied to the contributions for September 2020 through a portion of December 2020 and as the amounts were received by the Funds on February 2, 2026, interest on those contributions was calculated through that date. The interest was calculated through the date of service of the Plaintiffs' Motion for Summary Judgment for any contributions that remain outstanding, including the remaining amounts owed for December 2020 contributions. *See* Salvatierra Decl. ¶ 43, Ex. 12.

56. As set forth in the CBA, the Collection Policies, and in Section 502(g)(2) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in collecting any unpaid contributions from a delinquent employer. Salvatierra Decl. ¶ 44, Ex. 2, Art. VI; Exs. 3-5, Art. VI, Sec. 6; Ex. 7(a), ¶ 6; Ex. 8(a), Art. III.B.2.

57. Plaintiffs have incurred reasonable attorneys' fees and costs of $51,312.50 in connection with collecting the delinquent contributions underlying this action. *See* Richardson Decl., ¶¶ 18-21; 23-27; Ex. 4.

58. Discovery in this case has been extensive and nearly every step of the case has been delayed or drawn out unnecessarily by the Defendants and or their counsel. Richardson Decl., ¶ 18.

59. Throughout the litigation, counsel for SIPS has been dilatory in responding to the Plaintiffs and to the Court, in at least one instance forcing the Court to issue a show cause Order. Plaintiffs' counsel has been forced to follow up countless times and seek Court intervention on multiple occasions due to violated court orders or a failure to obtain Defendants' response or consent to some of the most basic filings in this case. This behavior created unnecessary disputes and further motions practice that was unwarranted in this case, especially considering the proportional needs of the case. Richardson Decl., ¶ 19.

60. As shown on the docket, Plaintiffs incurred unnecessary legal fees in this case that were reasonable given the extent of motion practice and discovery Plaintiffs were required to participate in to obtain Defendants' compliance and participation throughout this litigation. Richardson Decl., ¶ 20.

## V. <u>Total Amount Owed by Defendant to Plaintiff</u>

61. Based on the Audit, interest, liquidated damages calculations, and Plaintiffs' attorneys' fees and costs incurred in connection with this action, Defendant owes Plaintiff the sum of at least $158,553.96 , consisting of:

a. Remaining contributions owed to the Local 1 Funds totaling $69,017.32 for the period September 1, 2020 through December 31, 2022;

b. Interest on the total Fund contribution delinquency at the rate of ten percent (10%) per annum for interest totaling $30,776.79;

c. Liquidated damages of twenty percent (20%) of the total Fund contribution delinquency for liquidated damages totaling $13,803.46;

d. Delinquent contributions to the Union owed between September 1, 2020 through December 31, 2022 totaling $5,497.45;

e. Interest on the total Union contribution delinquency at the rate of 10% per annum for interest totaling $2,450.10;

f. Liquidated damages of twenty percent (20%) of the total Union delinquency for liquidated damages totaling $1,099.49;

g. ASB-C delinquencies of $6,386.31;

h. Lost earnings of $938.53;

i. Interest on the ASB-C findings and lost earnings of $2,351.78 and liquidated damages on same of $1,464.97;

j. Audit costs of $11,382.35;

k. Attorneys' fees and costs totaling $51,312.50 as detailed in the Declaration of Rebecca W. Richardson;

l. Administrative Fees of $2,000;

m. Less $12,727.60 in amounts already received, and $27,199.49 in contributions and associated interest and liquidated damages removed from the audit findings due to being assessed on work later shown to be performed outside of the geographical jurisdiction of the Union;

n. Additional interest on the delinquent contributions at the rate of ten percent (10%) per annum from October 12, 2026, through the date of judgment;

o. Post-judgment interest at the statutory rate; and

p. Any other relief the Court deems just and proper.

*See* Brusseau Decl., ¶ 27; *id.*, Exs. 2; Salvatierra Decl., ¶ 36, 45; *id.*, Ex. 12; Richardson Decl., ¶¶ 12, 23-27; *id*, Ex. 4.

Dated: Washington, D.C.
October 12, 2026

Respectfully submitted,

O'DONOGHUE & O'DONOGHUE, LLP

By: */s/ Rebecca W. Richardson*
Rebecca W. Richardson
*Attorney for Plaintiffs*