**PLUMBERS LOCAL UNION NO. 1**
**WELFARE FUND AND TRADE EDUCATION FUND**

**POLICY FOR COLLECTION OF DELINQUENT**
**FRINGE BENEFIT EMPLOYER CONTRIBUTIONS**

## ARTICLE I

## GENERAL POLICY

It is the policy of the Plumbers Local Union No. 1 Welfare Fund and the Plumbers Local Union No. 1 Trade Education Fund (collectively, the "Funds") to collect all employer contributions when they become due and to make such diligent and systematic efforts to ensure their prompt collection as are appropriate under the circumstances. The Plumbers Local Union No. 1 Welfare Fund shall serve as the collection agent for Plumbers Local Union No. 1 (the "Union") and the Plumbing Industry Promotion Fund of New York City.

If an employer ceases to have an obligation to contribute to the Funds pursuant to the Funds' Declarations of Trust, a collective bargaining agreement or applicable law, the employer shall remain subject to this Policy for those periods of time it was obligated to contribute to the Funds; and for those periods of time sufficient to complete an audit of its financial records to ensure it has fulfilled its obligations to contribute to the Funds.

The Board of Trustees of each Fund (collectively, the "Board") has the legal right to avail itself of all remedies it has under a collective bargaining agreement, the Declaration of Trust, the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and other applicable law, including but not limited to:

1. The right to establish a date on which contributions are due;

2. The right to audit the financial records of any contributing employers, including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941

and such other books and records of an employers as are necessary to ascertain that the proper contributions have been made;

3. The right to establish and conduct a random audit program;

4. The right to require that a delinquent employer pay interest on contributions not made on or before their due date, as well as pay attorneys' fees and any other expenses incurred by the Funds in determining the amount of a delinquency or in collecting a delinquency;

5. The right to recover liquidated damages;

6. The right to sue the owner of the contributing employer for breach of fiduciary duty;

7. The right to require a bond from contributing employers; and the right to require a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to the Funds; and

8. The right to take any other steps and to perform all other acts that are appropriate to insure timely and expeditious payment of contributions to the Funds.

The Board has appointed a subcommittee (the "Collections Subcommittee") consisting of one union trustee and one employer trustee as its designee to supervise the administration of this Policy; its current members are union trustee Michael Apuzzo and employer trustee Louis Buttermark, Jr.

Regular meetings of the Collections Subcommittee will be held at such time and places as determined by the Collections Subcommittee. Reasonable notice of the meeting shall be provided to the Union and the Association of Contracting Plumbers of the City of

New York (the "Association"). The Collection Subcommittee shall meet at least once per year and at such other times as it finds necessary to conduct business.

At or before a meeting of the Collections Subcommittee, the Board may designate an individual that is a trustee of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan as alternate Collections Subcommittee designee for the meeting. A union trustee shall be designated in place of Michael Apuzzo and an employer trustee shall be designated in place of Louis Buttermark, Jr. The union trustees eligible for designation as alternate Collections Subcommittee designee are Paul O'Connor, Daniel Lucarelli, Freddy Delligatti and Richard Gilligan, and they shall serve in that order. The employer trustees eligible for designation as alternate Collections Subcommittee designee are Terence O'Brien, Eugene Boccieri, Jeffrey Levine and Marie Cardoza, and they shall serve in that order.

All questions and disputes relating to the interpretation, meaning or application of this Policy shall be finally and exclusively resolved by the Board in the exercise of its discretion and in the performance of its fiduciary obligations to the Funds' participants and beneficiaries, in the protection of the financial integrity and soundness of the Funds and in the efficient and effective administration of the Funds.

The procedures set forth herein shall be followed unless the Board or the Collections Subcommittee, or its designees, determines that they should be modified, altered or waived in a particular instance.

## ARTICLE II

## COLLECTION PROCEDURE

In accordance with the Declarations of Trust, ERISA, and the above declaration of policy, the following administrative steps shall be taken to effectuate the collection of delinquent contributions to the Funds:

1. Contributions and the supporting remittance report (collectively referred to herein as "Contributions") are due by the twentieth (20th) day following the end of each calendar month or by Friday of the week following each payroll week if the employer is required to pay weekly Contributions (the "Due Date").

2. On the Due Date (or on the next business day if the Due Date falls on a weekend or holiday), or as soon thereafter as is practicable, the Funds will send a written notice to each delinquent employer advising the employer that Contributions due must be received immediately to avoid attorneys' fees and liquidated damages. The notice shall further advise the employer that if payment is not received immediately, the delinquency will be referred to the Funds' legal counsel for collection.

3. In the event the Funds have not received the appropriate Contributions by the 10th calendar day after the Due Date, the Funds, in addition to the procedures described below, shall attempt to contact the employer and shall inform the Union of the delinquency.

4. On the 10th day after the Due Date (or on the next business day if that date falls on a weekend or holiday), or as soon thereafter as is practicable, the Funds will send to each delinquent employer a copy of the written notice previously sent on the Due Date marked "Second Notice."

5. If the delinquent Contributions are not received by the Funds within ten (10) business days of the date of the notice referred to in Paragraph 4, the Funds shall promptly refer the matter to legal counsel. Counsel shall be sent a copy of the written notice and all other documents necessary to institute legal action.

6. Employers shall be liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated from the day following the Due Date and compounded annually), plus liquidated damages of twenty percent (20%) of the amount of delinquent Contributions owing, and all costs including, but not limited to, reasonable audit and accounting expenses, witness costs and attorneys' fees, disbursements and court costs. The charge to a delinquent employer for the costs and expenses of collection, in addition to any interest due, shall in no event be less than one hundred dollars ($100) for each failure to pay monthly Contributions, or weekly Contributions if the employer is required to pay Contributions weekly.

7. The time limits referred to in this Article II, including the periods of time within which the Funds or counsel shall send various notices are intended as guides for the Funds and counsel; and are not intended to, nor shall they be interpreted to, create rights for the benefit of delinquent employers.

## ARTICLE III

## LEGAL ACTION AND SETTLEMENT

**A. Legal Action**

1. As prescribed in Article II, Section 5, a delinquency shall be referred to the Funds' legal counsel promptly upon an employer's failure to remit Contributions within ten (10) business days of the date of the written notice.

2. Legal counsel shall promptly send a letter to the employer demanding immediate payment of the delinquent Contributions or face legal proceedings. The letter shall advise the employer that it is liable for the delinquent Contributions plus interest and liquidated damages thereon. The letter may also demand an immediate payroll audit if, in the discretion of the Board or the Collections Subcommittee, or its designees, such an immediate audit is warranted because the employer has been frequently delinquent and owes substantial Contributions. A copy of the letter shall be sent to the Union.

3. If the delinquent Contributions are not received within ten (10) calendar days of the date of counsel's letter to the employer, counsel shall ordinarily recommend to the Board or the Collections Subcommittee, or its designees, appropriate legal action to be undertaken against the employer. Such legal action includes but is not limited to, arbitration, commencement of a lawsuit in Federal court under ERISA or commencement of a lawsuit in state court against a surety on a payment bond. The Collections Subcommittee, or its designees, may, in its discretion, authorize counsel to initiate legal action in certain defined classes of cases without its express approval.

4. The determination of the appropriate legal action shall be based upon pertinent factors which include, but are not limited to, the following:

a) the amount of the delinquency;

b) the length of time the delinquent amount has been owed;

c) the financial condition of the employer;

d) the employer's past performance as a contributing employer;

e) the existence and identification of an applicable payment bond;

f) the likelihood of collecting on a judgment once it is obtained; and

g) any other factor that may have a material bearing on the collection of the delinquent Contributions.

5. A lawsuit shall not be commenced if the Board or the Collections Subcommittee, or its designees, determine that the costs of the suit will probably exceed the recovery.

6. Unless the Board or the Collections Subcommittee, or its designees, directs otherwise, a lawsuit will not be commenced if Contributions and interest do not collectively exceed $3,000.00.

7. Counsel shall ordinarily initiate a particular legal action within seven (7) days after the Board or the Collections Subcommittee, or its designees, authorize it.

8. The time limits referred to in this Article III, including the periods of time within which the Funds or counsel shall send various notices are intended as guides for the Funds and counsel; and are not intended to, nor shall they be interpreted to, create rights for the benefit of delinquent employers.

**B. Settlement**

1. Counsel is authorized to enter into settlement negotiations, either orally or in writing, with delinquent employers. Without further approval of the Board or the Collections Subcommittee, or its designees, counsel may agree to the immediate payment of the full amount owed, but any settlement which waives or compromises any portion of the amount owed, including interest, liquidated damages, attorneys' fees or costs, must be approved by the Board or the Collections Subcommittee, or its designees.

2. Unless the Board or the Collections Subcommittee, or its designees, specifically agree otherwise, no settlement may waive the collection of interest, liquidated damages or attorneys' fees.

3. The Board and the Collections Subcommittee, or its designees, may accept or reject an employer's proposal to pay delinquent Contributions, interest, liquidated damages, or attorneys' fees over a period of time, and may compromise any claim or delinquent account as recommended by counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owed, complies with all applicable law, including Department of Labor Prohibited Transaction Exemption 76-1.

4. In furtherance of the requirement that all settlements comply with all applicable law, including Department of Labor Prohibited Transaction Exemption 76-1, the Board and the Collections Subcommittee, or its designees, shall not agree to the payment of any delinquent Contributions, interest, liquidated damages, or attorneys' fees over a period of time unless the delinquent employer is unable to pay the amount(s) immediately.

5. Settlements that provide for payments over time or that compromise the principal amount due, the interest owed, any liquidated damages, attorneys' fees or costs, must be in writing and signed on behalf of the Funds and the employer unless counsel advises in writing that a written record of the settlement is inappropriate and states the reason it is inappropriate. Copies of all written settlements shall be kept on file by the Funds. In addition, counsel shall prepare a memorandum outlining the terms of the settlement and explaining why it is appropriate for the Funds to agree to it under Department of Labor Prohibited Transaction Exemption 76-1.

6. All settlements calling for payments over time shall be collateralized with fully executed and notarized Confessions of Judgment or Consent Judgments executed by the employer and the principal(s) of the employer in his or her individual capacity.

7. Notwithstanding the procedures set forth in this Policy, the Board or the Collections Subcommittee, or its designees, may refer any delinquent account to counsel at an earlier or later date than provided for herein when circumstances warrant that collection action be expedited or delayed.

8. The Trustees authorize the Fund Office to grant an employer's request to waive liquidated damages of less than $5,000 where the employer (1) is not known to owe any other amounts, (2) has timely submitted all reports, and (3) is properly bonded. The Fund Office shall report on all such waivers at the next meeting of the Collections Subcommittee.

## ARTICLE IV

## PAYROLL AUDITS

1(a). The Funds shall conduct a dual audit policy comprised of a random selection process as well as a targeted system.

(b) The Board and the Collections Subcommittee, or its designees, shall have discretion in determining how many employers shall be randomly audited and which employers will be targeted for audit in each year. The Funds shall endeavor to audit each active employer at least once during a two-year period, but in any event shall audit active employers at least once during a four-year period; the period of two or four years shall commence from the date of the last audit of the employer, or in cases where an employer has not previously been audited, from the date the employer first became a participating

employer in the Funds. Each employer that terminates its participation in the Funds or files a petition in bankruptcy shall be audited as soon as practicable following such termination or filing.

(c) The period audited shall be determined by the Board or the Collections Subcommittee, or its designees, based on the particular facts and circumstances.

(d) Notwithstanding the guidelines of this Article, the Board and the Collections Subcommittee, or its designees, may, in the exercise of their discretion, determine that the audit schedule set forth above should not be followed in a particular instance.

2. If an employer ceases to have an obligation to contribute to the Funds under the Funds' Declarations of Trust, a collective bargaining agreement or applicable law, the employer shall remain subject to these audit procedures for the purpose of verifying that the employer made the proper Contributions during the time period in which the employer was obligated to contribute to the Funds.

3. Upon completion of payroll audit fieldwork, the auditor shall conduct an exit interview with the audited employer, or its representative, explaining the rebuttal process. A preliminary audit report will be sent to the employer or its representative for review. The employer shall have ten (10) business days from the date of the preliminary audit report to object in writing to the auditor's findings. The auditor will examine the employer's rebuttal and, when appropriate, issue a revised audit report. The auditor may also request the Union or the Collections Subcommittee, or its designees, to review the audit report to evaluate certain information, such as an employer's factual representations. After all comments are received, the auditor may return to the employer for further

information and comment. The employer may object to the auditor's findings on any disputed issues by sending a written request for review to the Collections Subcommittee, or its designees, setting forth its position in detail. The request must be sent within fifteen (15) business days of the auditor's response to the employer regarding the disputed matter. At the conclusion of the rebuttal process, the auditor shall issue a final audit report. The auditor will incorporate in the final audit report, if appropriate, any explanations or defenses of the contributing employer.

4. The final audit report and a bill for the audit of the employer shall be sent to the Funds' Administrator.

5. Upon finalization of the audit report, the auditor will send a letter and a copy of the final audit report to the employer. The letter from the auditor will instruct the employer to pay the entire amount of the audit within ten (10) days.

6. If the employer does not pay the delinquent amount as found in the audit, or the delinquent amount as adjusted by the Auditor, within thirty (30) days from the date the Employer is notified of the amount due, Legal Counsel shall promptly send a letter to the employer demanding immediate payment of the audit amount or face legal proceedings.

7. If the audit amount is not received within ten (10) days of the date of counsel's letter to the employer, counsel shall recommend to the Trustees or the Collections Subcommittee, or its designees, appropriate legal action to be undertaken against the employer. Such legal action includes but is not limited to, arbitration, commencement of a lawsuit in Federal court under ERISA and commencement of a lawsuit in state court against a surety on a payment bond. The Collections Subcommittee, or its designees, may,

in its discretion, allow counsel to initiate legal action in certain defined classes of cases without its express approval.

8. If the audit amount is at least two (2) percent of the employer's total payroll for covered employees for the audit period or $25,000, whichever is less, the employer shall pay the cost of the audit.

9. Where an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees who worked for him and the hours worked, the Collections Subcommittee may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. This projection of delinquency may be made in place of a demand for production of payroll documents, or if the employer fails to provide such documents, in place of an audit. The projection may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit, and no other proof need be provided by the Trustees to any court or arbitrator to compute the total payments due from the employer for all delinquent months, exclusive of liquidated damages, interest, attorneys' fees and costs set out in this Article. This provision does not, however, limit the Trustees from seeking a greater amount than the projected delinquency if a greater amount is shown to be owed by records or other evidence.

10. In the event that an employer refuses to permit a payroll audit upon request by the Funds' Auditor, or if the employer refuses the Funds' Auditor access to pertinent

records, the Funds' Auditor shall inform the Fund Office. Except as otherwise provided in this Policy, the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the number of the employer's monthly hours subject to contributions for each month of the requested audit period is the highest number of hours reported in any month during the audit period. If the employer reported no hours during the audit period, then the determination shall be made based on the highest number of hours reported in any month during the prior audit period. A determination under this paragraph shall constitute presumptive evidence of delinquency. Prior to making such determination, the Fund Office shall send the employer a letter by regular mail and by Certified Mail, Return Receipt Requested, stating that such determination shall be made if the employer does not schedule an audit within seven (7) days after the date of the letter. The Funds may then file a lawsuit against the employer seeking the estimated amount of contributions if the employer does not fully cooperate with the auditor. In any such proceeding, the employer will be responsible for all delinquent contributions in the estimated amount determined under this paragraph, and all interest thereon, liquidated damages and attorneys' fees.

11. If circumstances warrant, the Collections Subcommittee may determine that, in lieu of or in addition to applying the estimation method prescribed by paragraph 10 of this Section, the Funds institute legal action to enforce the Trustees' right to conduct a payroll audit. In the event the Funds institute such action, the employer shall be assessed all costs and attorneys' fees incurred as a result of the employer's refusal to permit the payroll audit or refusal to make available all pertinent records. In addition to or in lieu of the procedures prescribed by this paragraph and/or paragraph 10 of this Section, the

Collections Subcommittee may determine to estimate the delinquency based on other available information.

12. In the event there is reason to suspect employer fraud or other misconduct with regard to an employer's obligations to the Funds, the Trustees or the Collections Subcommittee shall have the right to conduct a forensic audit, notwithstanding that a payroll review may have already been conducted for the same time period.

**ARTICLE V**

**REPORTS**

1. The Administrator shall ordinarily cause to be distributed to the Trustees at each Board meeting a delinquency report identifying all known delinquent employers, all known amounts owed and the steps that have been taken to collect the delinquent Contributions. The delinquency report shall be attached to and form a part of the minutes of the meeting at which it is presented. At least once every three months, legal counsel shall cause to be distributed to the Trustees a report on the counsel's efforts made to collect delinquent Contributions.

2. The Funds shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which employers are obligated to make Contributions.

3. All written settlements of delinquencies shall be kept on file in the Funds' office.

**ARTICLE VII**

**REFUND OF ERRONEOUS CONTRIBUTIONS**
**MADE AS A RESULT OF ARITHMETIC OR DATA ENTRY ERROR**

1. Once per calendar year, the Funds' Administrator shall review with the Trustees all overpayments made by employers during the preceding twelve (12) months apparently resulting from arithmetical or data entry error for which a corrective credit was not taken.

2. The Trustees shall review the apparently erroneous contributions identified by the Funds' Administrator and shall determine, in their sole and absolute discretion, whether erroneous contributions were made as a result of an employer's mistake of fact or mistake of law. In determining whether the contributions were made in error and whether a refund is appropriate, the Trustees will consider all circumstances, including the period of time that has elapsed since the contributions were made

3. Contributions determined by the Trustees to be erroneous will ordinarily be refunded to the employer within six (6) months after the determination. Any and all costs and expenses incurred by the Funds in correcting the employer's error, including administrative costs and any unpaid contributions, interest, audit fees or legal fees owed to the Funds by the employer, will be deducted from any amounts refunded. In accordance with the rules of the Internal Revenue Service and the Department of Labor, interest will not be paid to the Employer on the erroneous contributions.

## ARTICLE VIII

## REFUND OF ERRONEOUS CONTRIBUTIONS ARISING FROM MISCLASSIFICATION OF EMPLOYEES

1. Once contributions are made to the Funds, they may be returned to an Employer, in the Trustees' discretion, only upon the Employer's written request and only if the Employer conclusively demonstrates to the satisfaction of the Trustees that the contributions were made in error based on a mistake of fact or law.

2. In determining whether the contributions were made in error and whether a refund will be made, the Trustees shall consider all circumstances, including the period of time that has elapsed since the contributions were made and whether benefits have been paid based on the Employer's erroneous reporting of hours or contributions. Generally, contributions will not be refunded if a written request is not received within two years of the date the hours were worked.

3. In determining whether the contributions were made in error and whether a refund will be made, the Trustees shall consider whether the requested refund would result in a rescission of coverage. If so, the contributions will not be refunded.

4. Any and all costs and expenses incurred by the Funds in correcting the Employer's error will be deducted from any amounts refunded. These deductions will include the following, if applicable: the administrative costs of correcting the mistake; professional fees; computer related costs; any unpaid contributions, interest, liquidated damages, audit fees or other amounts owed to the Funds by the Employer; any benefits paid in reliance on the erroneous contributions or hours; the costs of collecting or attempting to collect such benefits; the expenses of any litigation resulting from the adjustment of any employee's pension or welfare benefits to reflect the erroneous contributions; and all other costs and losses to the Funds attributable to the erroneous contributions. Credits to employee's individual accounts based on the erroneous contributions will be deducted.

5. In accordance with the rules of the Internal Revenue Service and the Department of Labor, interest will not be paid to the Employer on the erroneous contributions.

6. Any employer who applies a claimed overpayment against future amounts due to the Funds prior to review and approval under this policy will be considered delinquent and liquidated damages and interest will be assessed on the amount of future contributions not paid.

7. The Subcommittee may approve a refund of erroneous contributions in an amount up to $5,000.00 for which a claim is made within two years after the month in which the hours representing those contributions were worked, but no later than 6 months after the determination by the Trustees under this policy that the contribution was made in error.

8. The Fund Administrator may approve a refund or credit for contributions in an amount up to $5,000.00 on the current remittance report that result from a miscalculation of the amount due based on the hours reported.

9. The Fund Administrator will refund erroneous contributions to the employer within six (6) months after the determination under this policy that the contribution was made in error.

| | |
|---|---|
| ______________________________ | ______________________________ |
| MICHAEL APUZZO, Co-Chair | EUGENE BOCCIERI, Co-Chair |
| Dated: _______________, 2021 | Dated: ________________, 2021 |