# PLUMBERS LOCAL UNION NO. 1 401(K) SAVINGS PLAN AND PLUMBERS LOCAL UNION NO. 1 WELFARE FUND ASB ACCOUNT C

## JOINT POLICY FOR COLLECTION OF DELINQUENT EMPLOYEE CONTRIBUTIONS AND PARTICIPANT AMOUNTS

### ARTICLE I

### GENERAL POLICY

It is the joint policy of the Plumbers Local Union No. 1 401(K) Savings Plan and the Plumbers Local Union No. 1 Welfare Fund Additional Security Benefit Account C (collectively, the "Funds") to collect all employer contributions, and all employee contributions and elective deferrals ("Participant Amounts"), when they become due and to make such diligent and systematic efforts to ensure their prompt collection as are appropriate under the circumstances.

If an employer ceases to have an obligation to contribute to the Funds pursuant to the Funds' Declarations of Trust, a collective bargaining agreement or applicable law, the employer shall remain subject to this Policy for those periods of time it was obligated to contribute to the Funds; and for those periods of time sufficient to complete an audit of its books and records to ensure it has fulfilled its obligations to contribute to the Funds.

The Board of Trustees of each Fund (collectively, the "Board") has the legal right to avail itself of all remedies it has under a collective bargaining agreement, the Declarations of Trust, the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and other applicable law, including but not limited to:

1. The right to establish a date on which contributions and/or participant amounts are due;

2. The right to audit the financial records of any contributing employer, including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of an employer as are necessary to ascertain that the proper contributions have been made;

3. The right to establish and conduct a random audit program;

4. The right to require that a delinquent employer pay interest on contributions and/or participant amounts not made on or before their due date, as well as lost earnings, attorneys' fees and any other expenses incurred by the Funds in determining the amount of a delinquency or in collecting a delinquency;

5. The right to recover liquidated damages;

6. The right to sue the owner of the contributing employer for breach of fiduciary duty;

7. The right to require a bond from contributing employers; and the right to require a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to the Funds; and

8. The right to take any other steps and to perform all other acts that are appropriate to insure timely and expeditious payment of contributions and/or participant amounts to the Funds.

The Board has appointed a committee (the "Collections Ccommittee") consisting of one union trustee and one employer trustee as its designee to supervise the administration of this Policy; its current members are union trustee Michael Apuzzo and employer trustee Louis Buttermark, Jr.

Regular meetings of the Collections Committee will be held at such time and places as determined by the Collections Committee. Reasonable notice of the meeting shall be provided to the Union and the Association of Contracting Plumbers of the City of New York (the "Association"). The Collection Subcommittee shall meet at least once per year and at such other times as it finds necessary to conduct business.

At or before a meeting of the Collections Committee, the Board may designate an individual that is a trustee of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan as alternate Collections Committee designee for the meeting. A union trustee shall be designated in place of Michael Apuzzo and an employer trustee shall be designated in place of Louis Buttermark, Jr. The union trustees eligible for designation as alternate Collections Committee designee are Paul O'Connor, Freddy Delligatti and Richard Gilligan, and they shall serve in that order. The employer trustees eligible for designation as alternate Collections Committee designee are Terence O'Brien, Eugene Boccieri, Jeffrey Levine and Marie Cardoza, and they shall serve in that order.

All questions and disputes relating to the interpretation, meaning or application of this Policy shall be finally and exclusively resolved by the Board in the exercise of its discretion and in the performance of its fiduciary obligations to the Funds' participants and beneficiaries, in the protection of the financial integrity and soundness of the Funds and in the efficient and effective administration of the Funds.

The procedures set forth herein shall be followed unless the Board or the Collections Committee, or its designee, determines that they should be modified, altered or waived in a particular instance.

## ARTICLE II

## EMPLOYER CONTRIBUTIONS

Employer Contributions and the completed reporting forms are due by the twentieth (20th) day following the end of each calendar month. If an employer does not file a report or make Employer Contributions by the tenth calendar day after the due date, all of the provisions of the Plumbers Local Union No. 1 Welfare Fund and Trade Education Fund Policy For Collection of Delinquent Fringe Benefit Contributions shall apply.

## ARTICLE III

## PARTICIPANT AMOUNTS

**A. Statement of Policy**

It is the policy of the Funds to collect all Participant Amounts in strict compliance with the regulations promulgated by the U.S. Department of Labor, 29 CFR § 2510.3-102 (the "Regulations"), and U.S. Department of Labor Field Assistance Bulletin No. 2003-2 ("FAB").

The Regulations provide, *inter alia*, that the assets of the Funds include amounts that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for remittance to the Funds as of the earliest date on which such Participant Amounts can reasonably be segregated from the employer's general assets. 29 CFR § 2510.3-102(a).

The Regulations further provide that in no event shall the date described above occur later than the fifteenth (15th) business day of the month following the month in which the participant contribution amounts are received by the employer (in the case of amounts that a participant or beneficiary pays to an employer) or in which the amounts would

otherwise have been payable to the participant (in the case of amounts withheld by the employer from a participant's wages). 29 CFR § 2510.3-102(b).

The FAB provides, *inter alia*, that the provisions of the Regulations apply to multiemployer benefit plans such as the Funds, and that

> a plan's process for receiving participant contributions should take into account how quickly the participating employers can reasonably segregate and forward contributions. The plan fiduciaries should also consider how costly to the plan a more expeditious process would be. These costs should be balanced against any additional income and security the plan and plan participants would realize from a faster system.

Effective January 14, 2010, U.S. Department of Labor regulations establish a safe harbor period of seven business days during which time amounts withheld from wages for contribution to employee benefit plans with 100 participants or fewer do not constitute "plan assets" for purposes of Title I of ERISA. This rule indicates that DOL has determined that most employers can segregate employee contributions from their general assets within seven business days.

It is the view of the Board that employers shall remit all Participant Amounts two (2) business days after the end of the payroll period from which the Participant Amounts were made and deducted from the wages of the employee, but in no event later than seven (7) business days after the end of the payroll period from which the Participant Amounts were made and deducted from the wages of the employee.

**B. Collection Procedure**

In accordance with the Declarations of Trust, ERISA, and the above declaration of policy, the following administrative steps shall be taken to effectuate the collection of delinquent Participant Amounts to the Funds:

1. Participant Amounts and the supporting remittance report are due seven (7) business days after the end of the payroll period from which the Participant Amounts were made and deducted from the wages of the employee (the "Due Date").

2 No later than the first business day of each month, the Funds or their designated representative shall send a demand letter to all employers who failed at any time during the preceding month to pay Participant Amounts to the Funds on the seventh business day after the end of the payroll period from which the Participant Amounts were made and deducted from the wages of the employee. The letter shall notify the employer of its failure to pay Participant Amounts on a timely basis, and advise the employer that payment of all delinquent Participant Amounts must be paid immediately. The letter shall advise the employer that failure to pay the Participant Amounts within seven (7) business days after the end of the payroll period from which the Participant Amounts were made and deducted from the wages of the employee shall cause the employer to be liable for the delinquent Participant Amounts plus interest on the delinquent Participant Amounts at the rate of ten percent (10%) per annum calculated from the Due Date and compounded annually. Additionally, the delinquent employer shall also be liable for the greater of lost earnings or restoration of profits, as defined by the Voluntary Fiduciary Correction Program of the U.S. Department of Labor, 65 Fed. Reg. 14164 (March 15, 2000), which in no event shall be less than the underpayment rate defined in Internal Revenue Code section 6621(a)(2), and which shall be determined by application of the DOL VFCP Online Calculator, and for all costs including, but not limited to, reasonable audit and accounting expenses, witness costs and attorneys' fees, disbursements and court costs. The Board may

also assess liquidated damages against any delinquent employer in the amount of twenty percent (20%) of the amount due.

3. The letter referred to in Section 2, above, shall also advise the employer that, if any Participant Amounts are delinquent, they must be received immediately to avoid legal action. The notice shall further advise the employer that if payment is not received immediately, the delinquency will be referred to the Funds' legal counsel for collection. A copy of the referral shall be sent to the Plumbing Industry Board.

4. If any delinquent Participant Amounts are not received by the Funds within seven (7) days of the date of the notice referred to in Paragraph 2, the Funds or their designated representative shall promptly refer the matter to legal counsel.

5. The time limits referred to in this Article III, including the periods of time within which the Funds or counsel shall send various notices are intended as guides for the Funds and counsel; and are not intended to, nor shall they be interpreted to, create rights for the benefit of delinquent employers.

## ARTICLE IV

## LEGAL ACTION AND SETTLEMENT

### A. Legal Action

1. As prescribed in Article III, Section 4, a delinquency shall be referred to the Funds' legal counsel promptly upon an employer's failure to remit Employee Contributions within seven (7) days of the date of the written notice.

2. Legal counsel shall promptly send a letter to the employer demanding immediate payment of the delinquent Participant Amounts or face legal proceedings. The letter shall advise the employer that it is liable for the delinquent Participant Amounts plus

interest, liquidated damages and any lost earnings or restoration of profits. The letter may also demand an immediate payroll audit if, in the discretion of the Board or the Collections Committee, or its designees, such an immediate audit is warranted because the employer has been frequently delinquent and owes substantial Contributions/Amounts. A copy of the letter shall be sent to the Plumbing Industry Board.

3. On the 23rd calendar day of each month (or the next business day if that date falls on a weekend or holiday), the Funds or their designated representative shall send a report to Legal Counsel identifying the employers that owe delinquent Participant Amounts. At the next regular monthly meeting of the Collections Committee, Legal Counsel shall ordinarily recommend to the Collections Committee appropriate legal action be undertaken against all employers that failed to pay delinquent Participant Amounts after receipt of counsel's letter. Such legal action includes but is not limited to, arbitration, or commencement of a lawsuit in Federal court under ERISA or commencement of a lawsuit in state court against a surety on a payment bond. The Collections Committee, or its designees, may, in its discretion, authorize counsel to initiate legal action in certain defined classes of cases without its express approval.

4. The determination of the appropriate legal action shall be based upon pertinent factors which include, but are not limited to, the following:

a) the amount of the delinquency;

b) the length of time the delinquent amount has been owed;

c) the financial condition of the employer;

d) the employer's past performance as a contributing employer;

e) the existence and identification of an applicable payment bond;

f) the likelihood of collecting on a judgment once it is obtained; and

g) any other factor that may have a material bearing on the collection of the delinquent Participant Amounts.

5. A lawsuit shall not be commenced if the Board or the Collections Committee, or its designees, determine that the costs of the suit will probably exceed the recovery.

6. Unless the Board or the Collections Committee, or its designees, directs otherwise, a lawsuit will not be commenced if the Participant Amounts and interest owed to the Funds does not collectively exceed $1,500.00; provided, however, that if the employer owes any Funds, including the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, 401(k) Savings Plan and Plumbing Industry Promotion Fund an aggregate amount exceeding $5,000.00, then this limitation shall not apply.

7. Counsel shall ordinarily initiate a particular legal action within seven (7) days after the Board or the Collections Committee, or its designees, authorize it.

8. The time limits referred to in this Article IV, including the periods of time within which the Funds or counsel shall send various notices are intended as guides for the Funds and counsel; and are not intended to, nor shall they be interpreted to, create rights for the benefit of delinquent employers.

**B. Settlement**

1. Counsel is authorized to enter into settlement negotiations, either orally or in writing, with delinquent employers. Without further approval of the Board or the Collections Committee, or its designees, counsel may agree to the immediate payment of the full amount owed, but any settlement which waives or compromises any portion of the

amount owed, including interest, lost earnings or restoration of profits, attorneys' fees or costs, must be approved by the Board or the Collections Committee, or its designees.

2. Unless the Board or the Collections Committee, or its designees, specifically agree otherwise, no settlement may permanently waive the collection of interest, liquidated damages, lost earnings or restoration of profits, or attorneys' fees.

3. The Board or the Collections Committee, or its designees, may accept or reject an employer's proposal to pay delinquent Participant Amounts, interest, liquidated damages, lost earnings or restoration of profits, or attorneys' fees over a period of time, and may compromise any claim or delinquent amount as recommended by counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owed, complies with applicable law.

4. Settlements that provide for payments over time or that compromises the principal amount due, the interest owed, if any, liquidated damages, lost earnings or restoration of profits, attorneys' fees or costs, must be in writing and signed on behalf of the Funds and the employer unless counsel advises in writing that a written record of the settlement is inappropriate and states the reason that it is inappropriate. Copies of all written settlements shall be kept on file by the Funds. In addition, counsel shall prepare a memorandum outlining the terms of the settlement and explaining why it is appropriate for the Funds to agree to it under applicable law. Copies of all written settlements shall be kept on file by the Funds at the offices of the Plumbing Industry Board.

5. All settlements calling for payments over time shall be collateralized with fully executed and notarized Confessions of Judgment or Consent Judgments executed by the employer and the principal(s) of the employer in his or her individual capacity.

6. Notwithstanding the procedures set forth in this Policy, the Board or the Collections Committee, or its designees, may refer any delinquent account to counsel at an earlier or later date than provided for herein when circumstances warrant that collection action be expedited or delayed.

7. The Board authorizes the Fund Office to grant an employer's request to waive liquidated damages of less than $5,000 where the employer (1) is not known to owe any other amounts, (2) has timely submitted all reports, and (3) is properly bonded. The Fund Office shall report on all such waivers at the next meeting of the Collections Committee.

## ARTICLE V

## PAYROLL AUDITS

1(a). The Funds shall conduct a dual audit policy comprised of a random selection process as well as a targeted system.

(b) The Board and the Collections Committee, or its designees, shall have discretion in determining how many employers shall be randomly audited and which employers will be targeted for audit in each year. The Funds shall endeavor to audit each active employer at least once during a two-year period, but in any event shall audit active employers at least once during a four-year period; the period of two or four years shall commence from the date of the last audit of the employer, or in cases where an employer has not previously been audited, from the date the employer first became a participating employer in the Funds. Each employer that terminates its participation in the Funds or files a petition in bankruptcy shall be audited as soon as practicable following such termination or filing.

(c) The period audited shall be determined by the Board or the Collections Committee, or its designees, based on the particular facts and circumstances.

(d) Notwithstanding the guidelines of this Article, the Board and the Collections Committee, or its designees, may, in the exercise of their discretion, determine that the audit schedule set forth above should not be followed in a particular instance.

2. If an employer ceases to have an obligation to contribute to the Funds under the Funds' Declaration of Trust, a collective bargaining agreement or applicable law, the employer shall remain subject to these audit procedures for the purpose of verifying that the employer made the proper Contributions during the time period in which the employer was obligated to contribute to the Funds.

3. Upon completion of payroll audit fieldwork, the auditor shall conduct an exit interview with the audited employer, or its representative, explaining the rebuttal process. A preliminary audit report will be sent to the employer or its representative for review. The employer shall have ten (10) business days from the date of the preliminary audit report to object in writing to the auditor's findings. The auditor will examine the employer's rebuttal and, when appropriate, issue a revised audit report. The auditor may also request the Union or the Collections Committee, or its designees, to review the audit report to evaluate certain information, such as an employer's factual representations. After all comments are received, the auditor may return to the employer for further information and comment. The employer may object to the auditor's findings on any disputed issues by sending a written request for review to the Collections Committee, or its designees, setting forth its position in detail. The request must be sent within fifteen (15) business days of the auditor's response to the employer regarding the disputed matter. At the

conclusion of the rebuttal process, the auditor shall issue a final audit report. The auditor will incorporate in the final audit report, if appropriate, any explanations or defenses of the contributing employer.

4. A copy of the final audit report and a bill for the audit of the employer shall be sent to the Funds' Administrator.

5. Upon finalization of the audit report, the auditor will send a letter and a copy of the final audit report to the employer. The letter from the auditor will instruct the employer to pay the entire amount of the audit within ten (10) days.

6. If the employer does not pay the delinquent amount as found in the audit, or the delinquent amount as adjusted by the Auditor, within thirty (30) days from the date the Employer is notified of the amount due, the Funds shall notify Legal Counsel of the failure and Legal Counsel shall promptly send a letter to the employer demanding immediate payment of the audit amount or face legal proceedings.

7. If the audit amount is not received within ten (10) days of the date of counsel's letter to the employer, counsel shall recommend to the Board or the Collections Committee, or its designees, appropriate legal action to be undertaken against the employer. Such legal action includes but is not limited to, arbitration, commencement of a lawsuit in Federal court under ERISA and commencement of a lawsuit in state court against a surety on a payment bond. The Collections Committee, or its designees, may, in its discretion, allow counsel to initiate legal action in certain defined classes of cases without its express approval.

8. If the audit amount is at least two (2) percent of the employer's total payroll for covered employees for the audit period or $25,000, whichever is less, the employer shall pay the cost of the audit.

9. Where an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees who worked for him and the hours worked, the Collections Committee may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. This projection of delinquency may be made in place of a demand for production of payroll documents, or if the employer fails to provide such documents, in place of an audit. The projection may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit, and no other proof need be provided by the Board to any court or arbitrator to compute the total payments due from the employer for all delinquent months, exclusive of liquidated damages, interest, attorneys' fees and costs set out in this Article. This provision does not, however, limit the Funds from seeking a greater amount than the projected delinquency if a greater amount is shown to be owed by records or other evidence.

10. In the event that an employer refuses to permit a payroll audit upon request by the Funds' Auditor, or if the employer refuses the Funds' Auditor access to pertinent records, the Funds' Auditor shall inform the Fund Office. Except as otherwise provided in this Policy, the Fund Office shall determine the estimated amount of the employer's

delinquent contributions based on the assumption that the number of the employer's monthly hours subject to contributions for each month of the requested audit period is the highest number of hours reported in any month during the audit period. If the employer reported no hours during the audit period, then the determination shall be made based on the highest number of hours reported in any month during the prior audit period. A determination under this paragraph shall constitute presumptive evidence of delinquency. Prior to making such determination, the Fund Office shall send the employer a letter by regular mail and by Certified Mail, Return Receipt Requested, stating that such determination shall be made if the employer does not schedule an audit within seven (7) days after the date of the letter. The Funds may then file a lawsuit against the employer seeking the estimated amount of contributions if the employer does not fully cooperate with the auditor. In any such proceeding, the employer will be responsible for all delinquent contributions in the estimated amount determined under this paragraph, and all interest thereon, liquidated damages and attorneys' fees.

11. If circumstances warrant, the Collections Committee may determine that, in lieu of or in addition to applying the estimation method prescribed by paragraph 10 of this Section, the Funds institute legal action to enforce the Funds' right to conduct a payroll audit. In the event the Funds institute such action, the employer shall be assessed all costs and attorneys' fees incurred as a result of the employer's refusal to permit the payroll audit or refusal to make available all pertinent records. In addition to or in lieu of the procedures prescribed by this paragraph and/or paragraph 10 of this Section, the Collections Committee may determine to estimate the delinquency based on other available information.

12. In the event there is reason to suspect employer fraud or other misconduct with regard to an employer's obligations to the Funds, the Board or the Collections Committee shall have the right to conduct a forensic audit, notwithstanding that a payroll review may have already been conducted for the same time period.

## ARTICLE VI

## REPORTS

1. The Administrator shall ordinarily cause to be distributed to the Board at each regular Subcommittee meeting a delinquency report identifying all known delinquent employers, all known amounts owed and the steps that have been taken to collect delinquent Employer Contributions and Participant Amounts. The delinquency report shall be attached to and form a part of the minutes of the meeting at which it is presented. At least once every three months, legal counsel shall cause to be distributed to the Board a report on the efforts made to collect delinquent Employer Contributions and Participant Amounts.

2. The Funds shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which employers are obligated to make Employer Contributions and forward Participant Amounts.

3. All written settlements of delinquencies shall be kept on file in the Funds' office.

## ARTICLE VII

## REFUNDS OF ERRONEOUS CONTRIBUTIONS

1. Once Contributions are made to the Funds, they may be returned to an employer, in the Collection Committee's discretion, only upon the employer's written

request and only if the employer conclusively demonstrates to the satisfaction of the Collections Committee that the Contributions were made in error based on a mistake of fact or law.

2. In determining whether the Contributions were made in error and whether a refund will be made, the Collections Committee shall consider all circumstances, including the period of time that has elapsed since the Contributions were made and whether benefits have been paid based on the employer's erroneous reporting of hours or Contributions. Generally, Contributions will not be refunded if a written request is not received within two years of the date the hours were worked.

3. No refund shall be provided unless the Collection Committee finds in its sole discretion that the refund is equitable and complies with all applicable provisions of law. Notwithstanding the foregoing, (1) requests for refunds and credits under $5,000 for arithmetic miscalculation of hours or rate can be granted on a ministerial basis by the Administrator if made within 45 days and if all other provisions are satisfied, and (2) all other requests for refunds under $1,500 can be granted on a ministerial basis by the Administrator if all provisions herein are satisfied.

4. The Funds will deduct from any refund the amounts of any unpaid Contributions, interest, delinquency assessment, audit fees or other amounts owed to the Funds by the employer, any investment losses incurred by the Funds on the erroneously contributed amounts, and all other costs, expenses, or losses incurred by the Funds as a result of the employer's error, including but not limited to the administrative costs of correcting the mistake, professional fees, computer related costs, any benefits paid in reliance on the erroneous Contributions or hours, the costs of collecting or attempting to

collect such benefits, and the expenses of any litigation resulting from the adjustment of any employee's pension or welfare benefits to reflect the erroneous contributions. Credits to employees' individual accounts based on the erroneous contributions will be deducted.

6. In accordance Internal Revenue Service regulations, the Funds will pay no interest or investment earnings to the employer in connection with the refunded amount.

7. An employer must not apply a claimed overpayment against subsequent amounts due to the Funds prior to review and approval of a refund or credit under this Policy. Any amounts so withheld by an employer will be treated as delinquencies for all purposes under this Policy.

8. If the Collections Committee or Administrator determines that Contributions are to be refunded, the Fund Office will issue the refund to the employer within six (6) months after the determination under this Policy that the contribution was made in error.

______________________________
MICHEL APUZZO, Co-Chair

Dated: ________________, 2022

______________________________
EUGENE BOCCIERI, Co-Chair

Dated: ________________, 2022