UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, AND 401(K) SAVINGS PLAN,<br><br>Plaintiffs,<br><br>-against-<br><br>SPRAY IN PLACE SOLUTIONS, LLC and ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | 24 CV 2568 (KAM)(PK) |

**PLAINTIFFS' REPLY TO DEFENDANTS' COUNTERSTATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Plaintiffs, the Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan, by and through their attorneys, O'Donoghue & O'Donoghue LLP, pursuant to the Federal Rules of Civil Procedure and Local Rule 56.1 of the Eastern District of New York, submit the following Reply to Defendants' "Counterstatement and Additional Material Facts in Support of Their Cross-Motion for Summary Judgment" Dkt. 68.

As an initial matter, Plaintiffs are unclear how to respond to Defendants' Counterstatement because of the Counterstatement's procedural improprieties. *See* Dkt. 69. The Counterstatement filed by Defendants pursuant to Local Rule 56.1 restates all facts contained in Plaintiffs' Local Rule 56.1 Statement, Dkt. 66-1, but does not contain any responses to these facts. Defendants' Counterstatement then includes numbered paragraphs under the heading "Additional material facts supporting Defendants' anticipated cross-motion". Pursuant to this Court's Individual Practice Rule III.B.4.c, if a party opposing a motion for summary judgment "chooses to include additional material facts alleged to be in dispute in their 56.1 Counter Statement, they must do so in a

separately titled section." (emphasis added). Further, Local Rule 56.1(b) is clear that the papers opposing a Motion for Summary Judgment, specifically those responding to a Party's 56.1 Statement, "if necessary, [may include] additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that *there exists a genuine issue to be tried*." (emphasis added). However, it appears that the additional facts in Defendants' Counterstatement are ones that Defendants allege are <u>not</u> in dispute.

While it is not clear from the Defendants' filing, pursuant to this Court's Individual Practice Rules, Plaintiffs respond as if the additional facts in Defendants' Counterstatement are additional material facts alleged to be in dispute. Plaintiffs request guidance from the Court if an alternate filing should be made. As required by this Court's Individual Practice Rule III.B.4.c, the Plaintiffs' 56.1 Reply statement only responds to the opposing party's counterstatement of additional material facts by stating the Plaintiffs' response immediately beneath each statement of additional material fact.

**Additional material facts supporting Defendants' anticipated cross-motion**

62. SIPS executed the MES renewal in November 2019 for an agreement effective October 1, 2019 through December 31, 2022. The renewal's recognition language refers to present and future job sites within Local 1's jurisdiction. ECF 66-3, at 1; ECF 66-4, Art. I, § 2.

**<u>PLAINTIFFS' RESPONSE:</u> Plaintiffs admit that SIPS executed the Plumbers and Gasfitters Local Union No. 1 Independent Mechanical Equipment and Service Division Collective Bargaining Agreement ("MES Agreement") in November 2019 and admits the effective dates of the MES Agreement SIPS agreed to be bound by. Plaintiffs deny Defendants' characterization of the "recognition language" in the MES Agreement. However, any dispute**

**regarding the interpretation of the MES Agreement is not genuine, as the plain language of the MES Agreement establishes the periods to which SIPs was bound.**

63. Article I, § 1 of the MES agreement states: "This Agreement applies to Mechanical Equipment and Service Division work performed in the five counties which comprise the City of New York and any reference to Journeymen or Helpers shall mean, unless otherwise indicated, Journeymen and Helpers who perform Mechanical Equipment and Service Division work." The bargaining-unit provision identifies the same five-county jurisdiction. Article I, § 6 separately refers to "A" Building Trades and "Oil Trades" agreements when specified New Construction or Pump and Tank installations are performed. ECF 66-4, printed pp. 3–5.

**PLAINTIFFS' RESPONSE: Plaintiffs admit the quoted text of Article I, § 1 is in the 2019-2022 MES Agreement. Plaintiffs object to Defendants' characterization of the "bargaining-unit provision" as it does not identify an Article or Section of the MES Agreement and therefore lacks evidentiary support through a citation to the record. Plaintiffs admit that Article I, § 6 of the 2019-2022 MES Agreement binds the signatory contractors to the provisions of the "A" Building Trades and "Oil Trades" Agreements when performing plumbing installations deemed as "New Construction" or "Pump and Tank."**

64. Martino worked at SIPS's warehouse in Bohemia, New York, in Suffolk County, when not traveling out of state or working at New York job sites. His shop work included cleaning the shop, working on trucks, and loading and unloading trucks. He performed no plumbing work at that warehouse. Affidavit of Jay J. Martino, sworn July 26, 2023 ("Martino Aff."), ¶¶ 6–8.

**PLAINTIFFS' RESPONSE: Plaintiffs object that these facts are not supported by admissible evidence. Defendants cite an Affidavit that was not included with their 56.1 Counterstatement and Defendants failed to file a 56.1 Statement with a supporting**

**declaration that attached admissible evidence as required by Judge Matsumoto's Individual Practice Rule III.B.4.f. To the extent a further response is required, Plaintiffs deny that Martino performed "no plumbing work" at the warehouse to the extent that Defendants mean that Martino did not perform Covered Work. Any dispute regarding the interpretation of the MES Agreement is not genuine, as the plain language of the Agreement defines Covered Work.**

65. Martino also traveled to job sites frequently located outside New York State. His pay stubs distinguished types of hours; his affidavit identifies "Shop Hours" generally as the warehouse work described in paragraph 64 and "On Site Regular" generally as work outside New York State. Martino Aff. ¶¶ 4–5, 9–11. Article II, Rule 7 of the MES agreement describes the trade work and its exclusions. ECF 66-4, printed pp. 7–8.

**PLAINTIFFS' RESPONSE: Plaintiffs object that this fact is not supported by admissible evidence. Defendants cite an Affidavit that was not included with their 56.1 Counterstatement and Defendants failed to file a 56.1 Statement with a supporting declaration that attached admissible evidence as required by Judge Matsumoto's Individual Practice Rule III.B.4.f. Plaintiffs further object to the characterization of hours as "generally" being work of one type or another. To the extent the Parties dispute these facts, the dispute is not genuine. The only admissible evidence on the record reflects that the hours in the payroll provided by SIPS did not consistently distinguish "Shop Hours" from "On Site Regular" hours and that certain "On Site Regular" hours did not include taxes from out-of-state that would support the allegation that those hours were worked outside of New York state. Brusseau Decl. Ex. 5. Plaintiffs further deny that only Article II, Rule 7 of the MES**

**Agreement describes "trade work" and its exclusions, but any such dispute is not genuine as the plain language of the MES Agreement speaks for itself.**

66. In calculating its expanded findings, the auditor included a group of 1,441.5 regular hours and 118 overtime hours recorded as shop, on-site, and NYC prevailing-wage hours. The stated basis included payment at a plumber wage rate and the auditor's conclusion that sufficient explanatory documentation had not been provided. That combined group is not identified as exclusively shop hours. Brusseau Decl., ECF 66-17, ¶ 17; expanded final audit, ECF 66-19, at 6. The Welfare Trust provides that, where records are insufficient to determine covered hours, an employee who performed covered work is presumed to have spent the entire time doing so, unless other records establish the hours. ECF 66-5, Art. VI, § 5, at 24–25.

**PLAINTIFFS' RESPONSE: Plaintiffs admit that the Funds' Auditor included 1,441.5 regular hours and 118 overtime hours in the Expanded Audit that were listed in the payroll as shop hours, on-site hours, and prevailing wage NYC hours. Plaintiffs deny the Defendants' characterization of the stated basis for including these hours. Any dispute regarding this allegation is not genuine as the evidence in the record clearly states the basis for the findings. Brusseau Decl. Ex. 2 at 6. Plaintiffs admit the language in Art. VI, § 5 of the Restated Trust Agreement of the Plumbers Local Union No. 1 Welfare Fund but Plaintiffs deny the interpretation of this language by Defendants. Any dispute as to how this language should be interpreted is not genuine, as the document speaks for itself. Moreover, any dispute regarding the interpretation of this language is not genuine or material, as the Collection Policies adopted by the Funds clarify the audit procedures and when any assumption may be made in assessing contributions owed. Salvatierra Decl. ¶ 14, Exs. 6(a), (b); 7(a), 7(b). Further, the language of the Trust Agreement is clear and unambiguous regarding the**

**Trustees full discretionary authority to interpret the agreement. Salvatierra Decl. in Support of Plaintiffs' Motion for Summary Judgment, Ex. 3, Art. V § 3.**

67. After reviewing additional time detail in April 2026, Plaintiffs' auditor identified work performed outside New York State as outside the geographical jurisdiction of covered work under the CBA. Brusseau Decl. ¶ 26; Salvatierra Decl., ECF 66-2, ¶ 34.

**<u>PLAINTIFFS' RESPONSE:</u> Plaintiffs admit that the Funds' Auditors reviewed additional time detail produced by Defendants in April 2026 and determined certain findings could be removed from the Expanded Audit because the additional documentation reflected that the findings were not attributable to hours of Covered Work as the work was performed outside the state of New York and therefore outside the geographical jurisdiction of the applicable CBA. Plaintiffs deny that the evidence was reviewed by the auditor in April 2026 or that any determination was made in April 2026. However, any dispute on this fact is not material because the timing of the review or determination is not significant. Any dispute is also not genuine, as the only admissible evidence is clear that the documentation was received in April 2026, not that it was reviewed or any hours were removed in April 2026.**

68. The auditor identified reductions of $14,328.70 in contribution principal, $5,200.65 in related interest, $2,624.58 in related liquidated damages, $3,322.07 in ASB-C findings, $1,059.07 in ASB-C interest, and $664.42 in ASB-C liquidated damages, totaling $27,199.49. Brusseau Decl. ¶ 27. Subtracting the conceded principal reduction from $74,514.77 yields $60,186.07 before other exclusions or payment allocation.

**<u>PLAINTIFFS' RESPONSE:</u> Admitted.**

69. The expanded audit applies the classification "Plumber - AJ 1000." For January–June 2021, its summary lists 124.25 regular hours with $2,460.15 in welfare charges and eight overtime hours

with $316.80 in welfare charges: $19.80 and $39.60 per hour, respectively. It lists $1,248.71 and $160.80 in employer 401(k) charges for those respective hours. ECF 66-19, at 7. MES Article IV(g) provides for straight-time overtime fringe contributions except the specified Target or United Association National Residential Agreement jobs, for which it provides time and one-half. ECF 66-4, printed p. 16.

**PLAINTIFFS' RESPONSE: Plaintiffs admit the Expanded Audit includes this specific example for certain hours attributed to a certain classification. However, Plaintiffs deny that the specific page referenced by Defendants include hourly rates for welfare charges. This dispute is not genuine, as the Audit Report detail lists the Welfare Fund hourly rate. ECF 66-19. Plaintiffs admit that the language of Article IV(g) of the MES Agreement is as stated.**

70. SIPS signed an Agreement for Equipment Installation Work dated September 28, 2020 identifying 3119 Jerome Avenue, Bronx, with job duration September 1–30, 2020. The document states that the contractor is not required to participate in the Local 1 401(k) Plan and that amounts otherwise payable to that plan shall be included in each employee's gross pay. It lists $21.71 for regular Local 1 fringe hours and $32.57 for overtime fringe hours. The copy's Union business-agent signature line is blank. "e agreement welkin.pdf," at 1.

**PLAINTIFFS' RESPONSE: Plaintiffs object that this fact is not supported by admissible evidence. Defendants cite an agreement that was not included with their 56.1 Counterstatement and Defendants failed to file a 56.1 Statement with a supporting declaration that attached admissible evidence as required by Judge Matsumoto's Individual Practice Rule III.B.4.f. Any dispute regarding this allegation is not genuine, as the admissible evidence reflects that Defendant never reported hours worked on this project. Brusseau**

**Decl., Ex. 8. Further, the admissible evidence does not reflect any identifiable work on this project.**

71. The expanded audit seeks $21,619.30 in employer 401(k) contributions, $42,528.26 in welfare contributions, $3,717.70 in trade education contributions, $1,152.06 in promotion contributions, $4,510.11 in union assessment, $824.40 in organizing-fund charges, and $162.94 in PAC charges before later geographic reductions and payment credits. ECF 66-19, at 7, 27.

**PLAINTIFFS' RESPONSE: Admitted.**

72. The National Pension Fund participation appendix addresses that named fund and includes a contribution provision for each hour or portion of an hour for which a covered employee is paid or entitled to payment for duties for the employer. The hourly categories listed in paragraph 71 do not include a National Pension Fund contribution. MES agreement, National Pension appendix, printed pp. 33–34 (ECF 66-4); ECF 66-19, at 7, 27.

**PLAINTIFFS' RESPONSE: Admitted.**

73. MES Article II, Rule 3 requires a monthly shop card showing fringe payments for the previous month. Rule 9 contains separate on-call, call-out, travel, and return-of-vehicle compensation provisions. Article IV distinguishes employer fringe contributions from employee 401(k) deferrals and payments to employee accounts. Article X conditions union-assessment deductions on individual written authorization. Article II, Rule 4 calls the political-fund deduction voluntary and provides an authorization requirement. ECF 66-4, printed pp. 6–9, 15–17, 22–23.

**PLAINTIFFS' RESPONSE: Plaintiffs admit that the Articles referenced in Defendants' Counterstatement paragraph 73 contain language regarding the topics referenced in paragraph 73. Plaintiffs deny Defendants' interpretation of this language. Any dispute over**

**the interpretation of language of the MES Agreement is not genuine, as the plain language of the Agreement controls.**

74. Plaintiffs' damages summary totals $198,481.05 before subtracting $12,727.60 already received and $27,199.49 in geographic exclusions, leaving $158,553.96. The $198,481.05 includes $51,312.50 in attorneys' fees. ECF 66-16, at 1. Accordingly, the $158,553.96 figure also already includes that fee request.

**PLAINTIFFS' RESPONSE:** **Admitted.**

75. Plaintiffs confirm receiving the $12,727.60 payment on February 2, 2026. Their interest schedule describes applying it to the oldest outstanding contributions and stopping interest on those amounts at the payment date. Salvatierra Decl. ¶¶ 33, 43; ECF 66-16, at 2. The expanded final audit separately lists $18,067.33 as additional outstanding delinquencies on file with the Fund Office. ECF 66-19, at 29.

**PLAINTIFFS' RESPONSE:** **Admitted.**

76. Plaintiffs seek $2,000 in administrative fees and $11,382.35 in audit costs in the current damages summary. ECF 66-16, at 1. The fringe-benefit collection policy's audit-cost provision uses the lesser of two percent of total payroll for covered employees for the audited period or $25,000. ECF 66-8, Art. IV, ¶ 8. The MES agreement also contains a reasonable audit/accounting-cost provision. ECF 66-4, Art. VI.

**PLAINTIFFS' RESPONSE:** **Plaintiffs admit that the MES Agreement provides for recovery of reasonable audit costs. Plaintiffs deny the interpretation of the audit costs to be collected. Any dispute is not genuine, as the admissible evidence in the record reflects that the Funds' collection policies require the employer (i.e. SIPS) to bear the cost of the audit if the audit**

**amount is at least two (2) percent of the employer's total payroll for covered employees for the audit period or $25,000, whichever is less. Salvatierra Decl. Exs. 6(a), 6(b), 7(a), and 7(b).**

77. The audit-production stipulation provides that the employer will pay any undisputed contributions determined due, preserves rights and defenses, disclaims wrongdoing and admissions, and restricts evidentiary use to enforcement of its terms. It also preserves the December 31, 2022 termination and disclaims reinstatement of a CBA through the agreed audit and reporting acts. ECF 66-30, ¶¶ 1–4.

**<u>PLAINTIFFS' RESPONSE:</u> Admitted.**

78. The collection policy gives the employer a preliminary-audit objection and review procedure, followed by a final report, a payment demand, and possible litigation. ECF 66-8, Art. IV, ¶¶ 3–7. Counsel's October 5, 2021 letter addressed to the Funds reports remittance-system problems and an earlier payment submission. October 5, 2021 letter to the Joint Plumbing Industry Board, at 1.

**<u>PLAINTIFFS' RESPONSE</u>: Plaintiffs admit the partial summarized contents of paragraphs 3-7 of Article IV of the Plumbers' Local Union No. 1 Welfare Fund and Trade Education Fund 2022 Policy for Collection of Delinquent Benefit Employer Contributions. Salvatierra Ex. 6(a). Plaintiffs object that the alleged facts regarding Counsel's October 5, 2021 letter as unsupported by admissible evidence. Defendants cite an October 5, 2021 letter that was not included with their 56.1 counterstatement and Defendants failed to file a 56.1 Statement with a supporting declaration that attached admissible evidence as required by Judge Matsumoto's Individual Practice Rule III.B.4.f.**

79. Bond No. 810002719 dated July 1, 2020 states a $7,000 penal sum and that the surety's aggregate liability for all or any defaults shall not exceed the bond's penalty. The rider changes the

amount to $21,000 effective February 18, 2021 and preserves other terms. The bond's cancellation provision preserves obligations accrued before cancellation becomes effective. ECF 66-12, at 1–2; ECF 66-13, at 1.

**PLAINTIFFS' RESPONSE:** **Admitted.**

80. The parties' September 25, 2026 joint letter describes the remaining SIPS corporate deposition and their request to defer it pending settlement efforts. ECF 64, at 1–2. The October 1, 2026 order sets a December 7, 2026 settlement conference and adjourns the discovery-completion deadline sine die, with a new completion proposal if settlement fails.

**PLAINTIFFS' RESPONSE:** **Admitted.**

Respectfully submitted,

Date: October 26, 2026

*/s/ Rebecca W. Richardson*
Rebecca W. Richardson
O'Donoghue & O'Donoghue LLP
*Counsel for the Plaintiffs*