UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, AND 401(K) SAVINGS PLAN,

Plaintiffs,

-against-

SPRAY IN PLACE SOLUTIONS, LLC and ATLANTIC SPECIALTY INSURANCE COMPANY,

Defendants.
---------------------------------------------------------------X

Case No.: 1:24-cv-2568 (KAM) (PK)

**DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT AND ADDITIONAL MATERIAL FACTS IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants Spray in Place Solutions, LLC ("SIPS") and Atlantic Specialty Insurance Company ("ASIC," and together with SIPS, "Defendants") respond, pursuant to Local Civil Rule (hereinafter "Local Rules" or "LCR") 56.1 and Section III.B.4 of the Chambers Practices of the Hon. Kiyo A. Matsumoto, U.S.D.J. ("Judge Matsumoto"), to Plaintiffs' Rule 56.1 Statement (ECF Docket Entry ("ECF") 66-1) as follows. Each numbered paragraph is reproduced verbatim, followed immediately by Defendants' response. Admissions are made solely for purposes of the parties' motions. Defendants' additional material facts follow consecutively at paragraphs 62-104. The evidence Defendants cite that is not already on the docket is annexed to the Declaration of Nikki Scott ("Scott Decl."), the Declaration of Jeffrey Sausele ("Sausele Decl."), and the Declaration of Emanuel Kataev, Esq. ("Kataev Decl."), each filed herewith. Documents already on the docket are cited by their ECF numbers.

## General Objections

Defendants assert the following objections, which each response below incorporates by letter. Each is made under Rule 56(c)(2) and (c)(4) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), LCR 56.1(d), and Section III.B.4.d-e of Judge

Matsumoto's Chambers Practices. An admission extends only to the fact stated, not to any characterization or legal conclusion.

A. Unsworn declaration. The Declaration of Benedetta Brusseau (ECF 66-17) ("Brusseau Decl.") is signed and dated, but it is not subscribed as true under penalty of perjury. ECF 66-17, at 6. It does not satisfy 28 U.S.C. § 1746 and is not competent evidence. See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65-66 (2d Cir. 1999); see also Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1033 (2d Cir. 1997). Plaintiffs' other declarants made the attestation. Compare ECF 66-27, at 7.

B. No personal knowledge; hearsay. Assertions made "upon information and belief," or recounting what others said or did, including through Plaintiffs' "former collections counsel," are not made on personal knowledge. See Fed. R. Civ. P. 56(c)(4); see also Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

C. Legal conclusions and argument. A Rule 56.1 statement must state facts, not legal conclusions, argument, or characterizations of a contract. See Chambers Practices § III.B.4.d; see also Hwangbo v. Kimganae, Inc., No. 19-cv-6356 (DLI) (SJB), ECF 52, slip op. at 3-4 (E.D.N.Y. Mar. 30, 2023). Where Plaintiffs characterize the governing agreements, Defendants admit the quoted text and identify the text Plaintiffs omit.

D. Unsupported or mischaracterized record. An assertion that the cited material does not support must be disregarded even if uncontroverted. See Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) (a Rule 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record"); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Jackson v. Fed. Express, 766 F.3d 189, 194 (2d Cir. 2014).

E. Inadmissible stipulation. The parties' Stipulation for the Production of Audit Documents (ECF 23; ECF 66-30) (the "Stipulation") "shall not be admissible evidence in any judicial ... proceedings for any reason except to enforce the terms." ECF 66-30, at 3, ¶ 4. Defendants object to any use of the Stipulation, or of conduct under it, as evidence of liability, and cite it only to enforce its terms.

F. Immaterial or compound. Paragraphs that recite procedural history or litigation conduct, or combine several assertions, are not short and concise statements of material fact. See LCR 56.1(a); see also Chambers Practices § III.B.4.c-d, g.

G. Incomplete discovery. This Court adjourned the deadline to complete discovery *sine die* by Order dated October 1, 2026, and the deposition of SIPS and the testimony of the employees whose hours are at issue have not been taken. Kataev Decl. ¶¶ 17-18. To the extent any fact is deemed insufficiently controverted, Defendants request relief under Rule 56(d). See Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).

## I. Parties

> 1. Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan (collectively, the "Local 1 Funds") are the Trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c) and ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Funds are administered at 50-02 Fifth Street, Second Floor, Long Island City, New York 11101. *See* Declaration in Support of Rebecca W. Richardson ("Richardson Decl."), ¶ 3; Declaration in Support of Wendy Salvatierra ("Salvatierra Decl."), ¶ 4.

**Response:** Objection C, as to the characterizations under the LMRA and ERISA. Subject to that objection, admitted that Plaintiffs are the trustees of the named funds and that the funds are administered at 50-02 Fifth Street, Second Floor, Long Island City, New York 11101. Disputed to the extent the paragraph implies that every amount Plaintiffs seek is an ERISA plan contribution:

the audit also charges union assessments of $4,510.11, organizing-fund charges of $824.40, and political action charges of $162.94. ECF 66-19, at 7, 27; ECF 66-4, at 13, Art. X.

> 2. Plaintiff Plumbers Local Union No. 1 Welfare Fund is the designated Collection Agent for Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union") and the Plumbing Industry Promotion Fund of New York City. The Union is, and at all relevant times was, a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. The Union represents, and at all relevant times represented, employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. § 142. *See* Salvatierra Decl. ¶ 2; Declaration in Support of Rebecca W. Richardson ("Richardson Decl.") ¶ 4.

**Response:** Objection C, as to the LMRA characterizations. Subject to that objection, admitted that the Welfare Fund was the designated collection agent for the Union and the Plumbing Industry Promotion Fund of New York City while SIPS was bound by the collective bargaining agreement ("CBA"), which terminated effective December 31, 2022. ECF 66-15; Kataev Decl. ¶ 5, Ex. C; ¶ 9, Ex. G.

> 3. Defendant, Spray in Place Solutions, LLC ("SIPS") is a foreign limited liability company organized under the laws of the State of Florida and duly authorized to conduct business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 602(5) and 1145, and was and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. SIPS maintains its principal place of business at 45 Knickerbocker Avenue, Suite 1, Bohemia, New York 11716. Richardson Decl., ¶ 5.

**Response:** Objection C, as to "employer" status under ERISA and the LMRA. Subject to that objection, admitted that SIPS is a Florida limited liability company authorized to do business in New York with its principal place of business at 45 Knickerbocker Avenue, Suite 1, Bohemia, New York 11716. Further state that SIPS' shop at that address is in Suffolk County, outside the five counties of the City of New York to which the MES Agreement applies. Scott Decl. ¶ 9; ECF 66-4, at 4, Art. I, § 1.

> 4. The New York Department of State Division of Corporations lists "THE LLC" with an address of 45 Knickerbocker Avenue, Suite 1, Bohemia, New York 11716, as the post office address to which the Secretary of State shall mail a copy of any process against the Company

served upon the Secretary of State by personal delivery. *See* Richardson Decl. ¶ 6, Ex. 1; Defendant's Answer to Complaint ("Answer") (Docket No. 13) ¶ 7.

**Response:** No objection. Admitted. See Answer ¶ 7 (ECF 13); ECF 66-28.

5. Upon information and belief, Jeffrey Sausele is the president of SIPS and resides at 554 Boxwood Drive, Shirley, New York 11967. *See* Richardson Decl. ¶ 7.

**Response:** Objections B and F. Richardson states this "[u]pon information and belief," and the residential address is immaterial. Subject to these objections, admitted that Jeffrey Sausele is a principal of SIPS. Disputed that he is its president: he is a principal and SIPS' Director of Field Operations, and he signed SIPS' February 5, 2021 letter to the Welfare Fund as "Owner." Sausele Decl. ¶¶ 1, 3, Ex. A. Defendants do not respond to the residential address, which should not be on the public docket.

6. Upon information and belief, SIPS performs "trenchless pipe restoration" using "spray-in-place pipe (SIPP)" technology to "rehabilitate" "like new pipe with an added 75 year engineered life expectancy" and has spent "30 years in the plumbing industry." *See* Richardson Decl. ¶ 8, Ex. 2.

**Response:** Objections B and D. The marketing statements are offered "[u]pon information and belief" and do not identify the location, trade, or governing agreement of any audited hour. Subject to these objections, admitted that SIPS performs pipe restoration using spray-in-place technology. Disputed that this establishes covered work: SIPS' payroll register codes hours paid under the Local 1 agreements separately from shop, on-site, driver, and prevailing-wage hours, and records state income tax withholding for Georgia, North Carolina, and Pennsylvania. Scott Decl. ¶ 14, Ex. D.

7. Defendant Atlantic Specialty Insurance Company ("ASIC," together with SIPS, the "Defendants") is a corporation incorporated under the laws of the State of New York and authorized to do business within the insurance industry in the State of New York. ASIC has its principal place of business located at One State Street Plaza, Fl 31, New York, NY 10004. *See* Richardson Decl. ¶ 9; Answer ¶ 9.

**Response:** No objection. Admitted. See Answer ¶ 9.

## II. Defendants' Obligation to the Plaintiffs

8. On or about November 26, 2019, SIPS executed a renewal agreement as a signatory to the Union's Mechanical Equipment and Service Division Collective Bargaining Agreement detailing the terms and conditions for certain mechanical equipment servicing work within the City of New York covering the period October 1, 2019 through December 31, 2022 (the "MES Agreement"). *See* Salvatierra Decl. ¶ 5, Ex. 1.

**Response:** No objection. Admitted that SIPS executed the renewal agreement in late November 2019 for the period October 1, 2019 through December 31, 2022, and that the MES Agreement "applies to Mechanical Equipment and Service Division work performed in the five counties which comprise the City of New York." ECF 66-3; ECF 66-4, at 4, Art. I, § 1; Scott Decl. ¶ 5. Further state that SIPS terminated the MES Agreement effective December 31, 2022. Kataev Decl. ¶ 5, Ex. C; ECF 66-15.

9. The MES Agreement requires that any entity bound to the agreement remit contributions to the Funds for all hours of covered work performed by its employees. *See* Salvatierra Decl. ¶ 6, Ex. 2, Arts. III, IV.

**Response:** Objections C and D. Subject to these objections, admitted that the MES Agreement requires contributions for hours of covered work. Disputed to the extent the paragraph omits the limits on that obligation: the MES Agreement applies only to work "performed in the five counties which comprise the City of New York," Article II, Rule 7(B) excludes projects with approved plans where the plumbing exceeds $725,000, and Rule 8 provides that MES work "shall not include work performed for Building Trades projects." ECF 66-4, at 4-6, Art. I, § 1; Art. II, Rules 7(B), 8. The shop work of SIPS employee Jay J. Martino ("Martino"), at SIPS' Suffolk County shop, was cleaning the shop, working on trucks, and loading and unloading trucks, and involved no plumbing. Scott Decl. ¶ 9; Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 6-8).

10. The MES Agreement provides that "[a]ny entity wishing to abrogate this Agreement must notify both the Association and the Union in writing by regular and express delivery mail a

> minimum of one hundred and eighty (180) days prior to the expiration date of this Agreement." *See* Salvatierra Decl. ¶ 7, Ex. 2, Article XVI.

**Response:** Objection D. Plaintiffs misquote Article XVI. Subject to that objection, disputed as stated. Article XVI requires notice to the Association and the Union "in writing by certified mail," not "by regular and express delivery mail." ECF 66-4, at 16, Art. XVI. SIPS gave that notice. On June 16, 2022, 198 days before the December 31, 2022 expiration, SIPS served written notice of termination on the Union and the Association by facsimile and certified mail, return receipt requested, and the Union received it by certified mail on June 23, 2022. Kataev Decl. ¶ 5, Ex. C; ECF 66-15, at 1-2. The Union acknowledged it by letter dated June 29, 2022. ECF 66-15, at 3.

> 11. The 2019-2022 MES CBA renewal agreement states, "[t]he undersigned Plumbing Contractor and individual signatory agree that the Collective Bargaining Agreement to which they shall be bound shall continue in effect until and including December 31, 2022 and during each year thereafter unless on or before the thirtieth (30th) day of June 2022, on or before the thirtieth (30th) day of June of any year thereafter, written notice of termination or proposed changes shall have been served by either party on the other party via certified or registered mail." *See* Salvatierra Decl. ¶ 8, Ex. 1.

**Response:** No objection. Admitted that the renewal agreement contains the quoted language. Further state that SIPS served written notice of termination by certified mail on June 16, 2022, before the June 30, 2022 deadline. Kataev Decl. ¶ 5, Ex. C; ECF 66-15, at 1-2.

> 12. On June 16, 2022, the Union informed the Funds that SIPS served written notice of intent to abrogate and the Union acknowledged this request on June 29, 2022. As a result, SIPS remained bound to the 2019-2022 MES Agreement through the expiration of its written term—December 31, 2022. *See* Salvatierra Decl. ¶ 9, Ex. 11.

**Response:** Objections C and D. Whether SIPS "remained bound" is a legal conclusion, and the cited exhibit does not show that the Union informed the Funds of anything on June 16, 2022. Subject to these objections, admitted that SIPS served written notice of termination on June 16, 2022, that the Union acknowledged it by letter dated June 29, 2022, and that the MES Agreement terminated effective December 31, 2022. ECF 66-15; Kataev Decl. ¶ 5, Ex. C. Disputed that the

Union informed the Funds on June 16, 2022: the notice was addressed to the Union and the Association, and the Union's letter is dated June 29, 2022. ECF 66-15, at 1-3. The Funds' auditor later confirmed that the audit period ended on December 31, 2022 "due to the abrogation." Kataev Decl. ¶ 9, Ex. G.

13. Accordingly, at all relevant times, Defendant was bound to a CBA with the Union. *See* Salvatierra Decl. ¶ 10.

**Response:** Objections C and D. The paragraph states a legal conclusion and cites only a conclusory declaration. Subject to these objections, admitted that SIPS was a signatory to the MES Agreement from late November 2019 through December 31, 2022. Disputed that SIPS was bound to any agreement with the Union after December 31, 2022, and that the MES Agreement reached work outside the five counties of the City of New York. ECF 66-4, at 4, Art. I, § 1; ECF 66-15; Kataev Decl. ¶ 5, Ex. C; ¶ 8, Ex. F; Scott Decl. ¶¶ 12-13.

14. Each of the individual Plaintiff Funds are governed by a trust agreement. *See* Salvatierra Decl. ¶ 11, Exs. 3, 4, and 5.

**Response:** No objection. Admitted. See ECF 66-5; ECF 66-6; ECF 66-7.

15. The Trust Agreements are incorporated by reference in the CBA and are binding upon SIPS. *See* Salvatierra Decl. ¶ 12, Ex. 2, Art. XV.

**Response:** Objection C. Whether the Trust Agreements are "binding upon SIPS" is a legal conclusion. Subject to that objection, admitted that Article XV of the MES Agreement refers to the Trust Agreements. ECF 66-4, at 15, Art. XV. Further state that any obligation of SIPS under them ended when the MES Agreement terminated on December 31, 2022. Kataev Decl. ¶ 5, Ex. C; ¶ 9, Ex. G.

> 16. The Local 1 Trust Agreements permit the Local 1 Funds to establish policies, rules, and procedures to collect unpaid contributions to the Funds. *See* Salvatierra Decl. ¶ 13, Exs. 3-5, Art. VI, Sec. 6.

**Response:** No objection. Admitted. Further state that the Welfare Fund Trust Agreement provides for liquidated damages of 20% "plus interest at the rate of twelve percent (12%)," or double interest, "in the discretion of the Trustees," not the 10% rate Plaintiffs claim. ECF 66-5, at 26, Art. VI.

> 17. Pursuant thereto, at a meeting held on June 24, 2021, the Trustees of the Local 1 Funds adopted a Policy for Collection of Delinquent Fringe Benefit Employer Contributions (the "Local 1 Fringe Benefit Collection Policy") and Joint Policy for Collection of Delinquent Employee Contributions and Participant Amounts ("401k Collection Policy," together with the Local 1 Fringe Benefit Collection Policy, the "Local 1 Collection Policies"). *See* Salvatierra Decl. ¶ 14, Exs. 6(a), (b); 7(a), (b).

**Response:** No objection. Admitted. Further state that the Collection Policies were adopted after the first ten months of the audit period, September 2020 through June 2021, and that they give an employer ten business days to object to a preliminary audit report and a further right to request Collections Committee review. ECF 66-8, at 10-11, Art. IV, ¶ 3.

> 18. The CBAs, Trust Agreement, and Collection Policies, require SIPS to submit reports ("remittance reports") to the Funds detailing the number of hours of all plumbing work and other specified work performed on behalf Defendant [*sic*] within the trade and geographical jurisdiction of the Union ("Covered Work") performed by its employees, as well as the corresponding benefit contributions to the Funds and to remit other specified amounts, including Union dues withheld from its employees' pay to the Funds in connection with Covered Work, no later than the twentieth (20th) day of the month following the month in which the hours were worked. *See* Salvatierra Decl. ¶ 15, Ex. 2, Arts. II, III, IV, VIII-X; Exs. 3-5, Art. V I; Exs. 6-7, Art. II.

**Response:** Objections C, D, and F. The definition of "Covered Work" is a legal conclusion, and the paragraph is compound. Subject to these objections, admitted that, while SIPS was bound, the MES Agreement required monthly remittance reports and contributions for covered work performed within the five counties of the City of New York. ECF 66-4, at 4, Art. I, § 1. Further state that Plaintiffs' own definition limits "Covered Work" to work "within the trade and

geographical jurisdiction of the Union," and that SIPS' shop, where Martino's shop hours were worked, is in Suffolk County. Scott Decl. ¶ 9; Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 6-8). Disputed that SIPS could submit remittance reports through the Funds' online system. Beginning in May or June 2020, SIPS tried for months, without success, to have its employee Chad McGregor ("McGregor") and Martino added to its employee roster on that system, and could not submit reports for their hours after May 2020. When SIPS later tried to remit, the Funds' portal displayed, for both Martino and McGregor, "Our records do not show that this Employee has been added to your Employee roster." SIPS instead remitted on paper, by check. Scott Decl. ¶¶ 8, 11, 15, Exs. E, J; Sausele Decl. ¶ 3, Ex. A; Kataev Decl. ¶¶ 3-4, 11-12, Exs. A-B, I-J. Plaintiffs' own auditor attributed the problem to the Funds' system, writing on January 3, 2023 that SIPS' MES agreement "most likely was the issue with paying benefits through the system," and on May 26, 2023 that some of Martino's hours were hours "he could not report due to the iremit system." Kataev Decl. ¶¶ 13-14, Exs. K-L (auditor's emails). Further disputed that every hour charged in the audit was covered work. The auditor charged Martino's hours as if he were doing plumbing work only because "it could not be fully determined what Mr. Martino was doing with his hours," and later wrote that he "only had shop hours in 2022" and that his hours were "mostly to do with shop hours." Kataev Decl. ¶¶ 13-14, Exs. K-L; Scott Decl. ¶ 17, Exs. G-H (SIPS' comparison of its payroll records with the audit); Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 4-11).

> 19. According to the CBA, "[c]ommencing with the effective dates of this Agreement [October 1, 2019], the Employer agrees to pay to and on behalf of his/her Journeymen the rates set forth in Table No. 1. The Employer also agrees to pay to and on behalf of the Helpers the rates set forth in Table No. 2." *See* Salvatierra Decl. ¶ 16, Ex. 2, Art. III. The Tables referenced explicitly include hourly wages *and hourly fringes* as a compensation package. *Id.*

**Response:** Objections C and D. Subject to these objections, admitted that Article III sets wage rates for Journeymen and Helpers in Tables 1 and 2. ECF 66-4, at 7, Art. III. Disputed that SIPS'

payment of a wage rate for shop, on-site, driver, or out-of-state hours makes those hours covered work. SIPS' payroll register codes hours paid under the Local 1 agreements separately from shop, on-site, and driver hours. Scott Decl. ¶ 14, Ex. D; Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 4-11).

> 20. The CBA further states, "[t]he Employer agrees, in addition to wages, to pay on behalf of each Journeyman and Helper the fringe benefits set forth in Tables 1 and 2." *Id.* ¶ 17, Ex. 2, Art., Art. IV.

**Response:** Objection C. Subject to that objection, admitted that Article IV contains the quoted language. ECF 66-4, at 9, Art. IV. Further state that Article IV(g) provides for straight-time fringe contributions on overtime hours except on specified jobs. Even so, the audit charged overtime welfare contributions at $39.60 per hour, twice the $19.80 regular rate. ECF 66-4, at 10-11, Art. IV(g); ECF 66-19, at 7.

> 21. Covered Work defined under the terms of the CBA includes but is not limited to "Any repair and/or replacement of the present plumbing system at commercial sites and/or residential buildings." *See id.* ¶ 18, Ex. 2, Art. II, Rule 7(B).

**Response:** Objections C and D. The paragraph excerpts one clause and calls it a definition. Subject to these objections, admitted that Article II, Rule 7(B) contains the quoted words. Disputed that the excerpt defines covered work. Article I, § 1 limits the MES Agreement to work in the five counties of the City of New York. Rule 7(B) excludes projects with approved plans where the plumbing exceeds $725,000. Rule 8 excludes "work performed for Building Trades projects." ECF 66-4, at 4-6. Martino's shop work was cleaning the shop, working on trucks, and loading and unloading trucks, not repair or replacement of a plumbing system. Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 6-8); see also Brusseau Decl. ¶ 17.

22. Contributions are calculated by taking the number of hours of Covered Work performed during the reporting period and multiplying said hours by the applicable contribution rates set forth in the CBAs. *See id.* ¶ 19, Ex. 2, Arts. III-IV.

**Response:** No objection. Admitted as a description of the arithmetic. Disputed that the audit applied it solely to covered hours at the correct rates. Brusseau Decl. ¶ 17; ECF 66-19, at 7; Scott Decl. ¶ 17, Exs. G-H.

23. The CBAs and the Collection Policies require SIPS to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with its contribution obligations to Plaintiffs. *See* Salvatierra Decl., Ex. 2, Art. XIV; Ex. 6, Art. IV; Ex. 7, Art. V. The CBAs specifically state, "[SIPS] agrees to keep its labor payrolls and job and time books and comprehensive books available for joint inspection by representatives of the Union and the Association, and the accountant of the Joint Plumbing Industry Board, who shall be permitted to examine same to. . . check the Fringe Benefits. . . ." *See id.* ¶ 20, Ex 2, Art. XIV.

**Response:** No objection. Admitted that, while SIPS was bound, the MES Agreement and the Collection Policies required SIPS to make its payroll records available for audit. Further state that SIPS produced its records for audit in October 2020 and October 2022, and that Plaintiffs' auditor received all documents it needed for the Expanded Audit on or about August 4, 2025. Kataev Decl. ¶¶ 3, 6, Exs. A, D; Brusseau Decl. ¶ 15.

24. The Collection Policies also state, "The Funds shall conduct a dual audit policy comprised of a random selection process as well as a targeted system." *See* Salvatierra Decl. ¶ 21, Ex. 6, Art. IV, ¶ 1; Ex. 7, Art. V, ¶ 1. The Collection Policies state further that, "The Board and the Collections Committee, or its designees, shall have discretion in determining how many employers shall be randomly audited and which employers will be targeted for audit in each year." *Id.*

**Response:** Objection F. The criteria for selecting employers for audit are immaterial. Subject to that objection, admitted. ECF 66-8, Art. IV, ¶ 1; ECF 66-10, Art. V, ¶ 1.

25. Under the documents and instruments governing the Local 1 Funds, including the CBAs, Trust Agreements, and Local 1 Collection Policies, employers whose contributions are delinquent are liable to the Local 1 Funds for the amount of delinquent contributions, interest thereon at the rate of ten percent (10%) *per annum*, plus liquidated damages equal to twenty

> percent (20%) of the delinquent contributions, and attorneys' fees and costs. *See id.* ¶ 22, Ex. 2, Art. VI; Exs. 3-5, Art. VI, Sec. 6; Ex. 6, Art. 2, ¶ 6; Ex. 7, Art. III.B.2.

**Response:** Objections C and D. Subject to these objections, admitted that the governing documents provide for interest, liquidated damages, attorneys' fees, and costs on delinquent contributions, subject to their terms. Disputed that the instruments uniformly provide for interest at 10% per year. The Welfare Fund Trust Agreement provides for interest "at the rate of twelve percent (12%)," or double interest, "in the discretion of the Trustees." The Collection Policy provides for 10% "compounded annually." Plaintiffs' own schedule computes simple daily interest. ECF 66-5, at 26, Art. VI; ECF 66-8, at 5, Art. II, ¶ 6; ECF 66-16, at 2. Disputed that SIPS is delinquent in the amounts claimed. See responses to ¶¶ 40, 52.

## III. ASIC's Obligation to the Plaintiffs

> 26. On or about July 1, 2020, ASIC issued Bond No. 810002719 (the "Bond") guaranteeing the payment of all benefits owed in connection with all Covered Work performed by SIPS' employees to the Funds up to the amount of $7,000. *See* Salvatierra Decl. ¶ 37, Ex. 8.

**Response:** No objection. Admitted that ASIC issued Bond No. 810002719, dated July 1, 2020, in the penal sum of $7,000. Further state that the Bond limits the surety's aggregate liability for all defaults to the penalty of the Bond. ECF 66-12, at 1-2.

> 27. In or around February 18, 2021, ASIC issued a rider to be attached to the Bond (the "Rider") which increased the amount of the Bond to $21,000. The Rider was received by the funds on or about March 5, 2021. *See* Salvatierra Decl. ¶ 38, Ex. 9.

**Response:** Objection D. Subject to that objection, admitted that ASIC issued a Rider effective February 18, 2021, increasing the penal sum to $21,000, and that the Funds received it on or about

March 5, 2021. Further state that the Rider identifies the bond as dated October 7, 2019, and leaves the Bond's other terms, including the aggregate limit, unchanged. ECF 66-13, at 1. SIPS' insurance broker described the Bond as "coming up for renewal 10/7/22." Scott Decl. ¶ 20, Ex. M.

> 28. The terms of the Bond stated that the Bond was to remain valid unless and until ASIC notified the Funds of the cancelation of the Bond via certified mail with ninety (90) days' notice. *See* Salvatierra Decl. ¶ 39, Ex. 8.

**Response:** No objection. Admitted. Further state that, after cancellation, the Bond covers only obligations that accrued before the cancellation took effect. ECF 66-12, at 2.

> 29. On or about January 2024, the Funds received a notice of cancelation from ASIC via first class mail which stated that the Bond would be canceled on April 8, 2024. *See* Salvatierra Decl. ¶ 40, Ex. 10.

**Response:** No objection. Admitted that the Funds received ASIC's notice of cancellation, mailed January 4, 2024, stating that the Bond would be canceled effective April 8, 2024. ECF 66-14. The method of mailing is immaterial: every amount claimed accrued for work performed through December 31, 2022, and the Bond covers obligations accrued before cancellation, and SIPS sent the notice via certified mail. ECF 66-12, at 2.

## IV. Defendant's Failure to Remit Contributions to Plaintiffs in accordance with the CBA

> 30. Plaintiffs, pursuant to the CBA and the Collection Policies, on or about July 21, 2022, engaged their independent auditors at the accounting firm Schultheis & Panettieri LLP ("S&P" or the "Auditor") to conduct a target payroll audit of SIPS for the time period September 1, 2020 through June 30, 2022 (the "Audit"). Salvatierra Decl., ¶ 23; Brusseau Decl. ¶ 3.

**Response:** Objection A. Subject to that objection, admitted that Plaintiffs engaged Schultheis & Panettieri LLP on or about July 21, 2022 to audit SIPS' payroll for September 1, 2020 through June 30, 2022. Further state that SIPS produced its records for the Audit by letter dated October 4, 2022. Kataev Decl. ¶ 6, Ex. D.

31. Based on the Auditor's analysis and comparison of the hours that Defendant's employees performed Covered Work during the period of September 1, 2020 through June 30, 2022, the amount of hours of Covered Work that Defendant reported to Plaintiffs during that period, and the amount of contributions that Defendant remitted to Plaintiff during that period, the auditor issued a report reflecting that Defendant owed a total delinquency to Plaintiffs of at least $46,465.17 in contributions, interest and liquidated damages thereon; ASB-C findings of $3,415.69, and lost earnings of $232.61, interest and liquidated damages thereon; and audit costs of $3,635.50, plus the Plaintiffs' attorneys' fees and costs. *See* Salvatierra Decl. ¶ 24; Brusseau Decl., ¶¶ 5-7, Ex. 1.

**Response:** Objections A, C, D, and F. Whether SIPS "owed" a "delinquency" for "Covered Work" is a legal conclusion, and the paragraph combines the auditor's method, its findings, and Plaintiffs' fees. Subject to these objections, admitted that the auditor's initial report stated the figures recited. Disputed that SIPS owed them. On July 26, 2023, SIPS served written exceptions on the auditor disputing Martino's shop and out-of-state hours, supported by Martino's sworn affidavit. Kataev Decl. ¶ 7, Ex. E. The plumbers committee had granted SIPS until that date to review the audit before it was finalized. Kataev Decl. ¶ 14, Ex. L (auditor's email of June 27, 2023). The initial findings did not rest on any determination that Martino performed covered work. The auditor charged his hours "as If he was doing plumbing work" because "it could not be fully determined what Mr. Martino was doing with his hours," and later wrote that those hours were "mostly to do with shop hours." Kataev Decl. ¶¶ 13-14, Exs. K-L. The Funds themselves described the audit as a "closeout audit" conducted because SIPS was "seeking abrogation from the CBA's with Local 1." Scott Decl. ¶ 19, Ex. L. The Expanded Audit superseded the initial findings, and the auditor later removed $27,199.49 from them as attributable to work outside New York State. Brusseau Decl. ¶ 27.

32. The Auditor created a preliminary report that was issued to the Defendant on May 16, 2023. *See* Brusseau Decl. ¶ 13, Exs. 3, 4.

**Response:** Objections A and D. Subject to that objection, admitted that the auditor issued a preliminary report on May 16, 2023. Disputed that SIPS accepted its findings: SIPS served written

exceptions on July 26, 2023. Kataev Decl. ¶ 7, Ex. E; ¶ 9, Ex. G (auditor confirming that "[t]he original preliminary report was sent out to you on 5/16/2023"). The plumbers committee granted SIPS 30 days, through July 26, 2023, to review the preliminary audit before it was finalized, and SIPS served its exceptions on that date. The auditor forwarded them "to the Fund attorney and the Funds office for review," to be "brought up in the next collection committee meeting on 8/24," and the Funds' counsel responded to them on August 31, 2023. Kataev Decl. ¶¶ 14-15, Exs. L-M (emails of the auditor and the Funds' counsel).

> 33. Upon learning that SIPS' bond securing payments owed to the Funds would be terminated effective April 8, 2024, at a Collections Committee meeting on January 8, 2024, the Trustees of the Funds directed S&P to change the target audit to a closeout audit and expand the period to cover September 1, 2020 through December 31, 2023 (the "Expanded Audit")[1]. *See* Salvatierra Decl. ¶ 25; Brusseau Decl., ¶ 14. [1] The parties in this litigation eventually stipulated that the Expanded Audit would go through December 31, 2022. Brusseau Decl. ¶ 4; Richardson Decl. ¶ 16.

**Response:** Objections A, B, and D. Subject to these objections, admitted that the Trustees directed the auditor to expand the audit after ASIC's cancellation notice. Disputed as to the date, which Plaintiffs' auditor gives as both January 8 and January 18, 2024. Brusseau Decl. ¶¶ 4, 14. Disputed that SIPS owed anything for any period after December 31, 2022. SIPS' agreement had terminated, the Funds' auditor acknowledged the termination, and the Expanded Audit was limited to December 31, 2022. Kataev Decl. ¶ 8, Ex. F; ¶ 9, Ex. G; Scott Decl. ¶ 13.

> 34. SIPS refused to comply with the Expanded Audit. *See* Salvatierra Decl. ¶ 26; Brusseau Decl. ¶ 15; Richardson Decl. ¶¶ 15, 16.

**Response:** Objections A, B, and C. Richardson relies on "former collections counsel," and "refused" is a characterization. Subject to these objections, disputed. SIPS did not refuse an audit of any period in which it was bound. It declined to produce records for 2023, after its agreement had terminated, and said so in writing on April 10, 2024. Kataev Decl. ¶ 8, Ex. F. SIPS then produced its records, and the auditor received all documents it needed for the period through

December 31, 2022 on or about August 4, 2025. Brusseau Decl. ¶ 15. Plaintiffs abandoned the 2023 period. ECF 66-1 ¶ 33 n.1; Brusseau Decl. ¶ 4.

> 35. The Plaintiffs brought this litigation to pursue the amounts identified in the Initial Audit, to compel SIPS' compliance with the Expanded Audit, and for the unknown amounts identified in the Expanded Audit. *See* Richardson Decl. ¶ 11.

**Response:** Objections C and F. Subject to these objections, admitted that Plaintiffs commenced this case seeking the relief stated in the Complaint. ECF 1. Disputed that SIPS owed any amount for 2023: Plaintiffs abandoned that period. ECF 66-1 ¶ 33 n.1; Kataev Decl. ¶ 8, Ex. F.

> 36. Starting in September 2024, the Parties—Plaintiffs through former collections counsel—negotiated to obtain a stipulation governing the production of documents, including documents related to the Expanded Audit. *See* Richardson Decl. ¶ 14.

**Response:** Objections B, E, and F. Richardson recounts negotiations conducted by others, the negotiations are immaterial, and the resulting Stipulation is inadmissible except to enforce its terms. ECF 66-30, at 3, ¶ 4. Subject to these objections, admitted that counsel began negotiating a stipulation in or about September 2024.

> 37. After extensive negotiations, on March 25, 2025, Plaintiffs and SIPS signed a stipulation for the Production of Audit Documents, under which SIPS was obligated to produce all outstanding documents, submit to the Expanded audit from July 1, 2022 through December 31, 2022, and pay any undisputed amounts owed. *See* Richardson Decl. ¶ 15.

**Response:** Objections B, D, and E. Subject to these objections, admitted that the parties executed the Stipulation on or about March 25, 2025. Disputed as to its terms. SIPS agreed to an audit only through December 31, 2022. The Stipulation recites that SIPS "timely issued a termination notice of the CBA, effective December 31, 2022." It requires payment only of undisputed contributions, and it reserves SIPS' rights and defenses. ECF 66-30, at 1-3, ¶¶ 1-4.

38. On April 2, 2025, the Parties filed a Stipulation for the Production of Audit Documents for the Defendant SIPS to comply with the Expanded Audit for the period September 1, 2020 through December 31, 2022. *See* Richardson Decl. ¶ 16, Ex. 3.

**Response:** Objections E and F. Subject to these objections, admitted that the Stipulation was filed on April 2, 2025. ECF 23; ECF 66-30.

39. On August 4, 2025, the Funds Auditors received the remaining documents needed to complete the Expanded Audit covering the period through December 31, 2022. *See* Brusseau Decl. ¶ 15.

**Response:** Objection A. Subject to that objection, admitted that the auditor received the remaining documents on or about August 4, 2025. Further state that, from those records, Plaintiffs' auditor found only 245.25 regular hours and 28.50 overtime hours "identifiable in the payroll as Local 1 plumbing work." Brusseau Decl. ¶ 17.

40. Based on the Auditor's analysis and comparison of the hours that Defendant's employees performed Covered Work during the period of September 1, 2020 through December 31, 2022, the amount of hours of Covered Work that Defendant reported to Plaintiffs during that period, and the amount of contributions that Defendant remitted to Plaintiff during that period, the Expanded Audit Report reflected that Defendant owed a total delinquency to Plaintiffs of at least $136,746.57 consisting of i) contributions owed to the Local 1 Funds totaling $69,017.32; ii) interest on unpaid contributions to the Local 1 Funds totaling $27,170.44[2]; iii) liquidated damages owed to the Local 1 Funds totaling $13,573.05; (iv) contributions owed to the Union totaling $5,497.45; and (v) interest owed thereon totaling $2,192.27; (vi) ASB-C findings of $6,386.31, and lost earnings of $938.53, interest thereon of $2,351.78, liquidated damages of $1,464.97; and audit costs of $8,154.45[3]. Brusseau Decl., ¶¶ 16-18; *id.*, Ex. 2; *see also* Salvatierra Decl. ¶¶ 28, 36, Ex. 12. [2] The interest as reflected in the Final Report dated August 26, 2025 is less than the interest calculated for the purpose of summary judgment due to the accumulation of additional interest from the date on which the Final Report was issued and accounting for payments made to date for which interest was only calculated through the date of that payment. [3] The audit costs have increased since the date on which the Final Report was issued due to additional work by the auditor as a result of SIPS providing additional documentation concerning the audit findings during the course of this litigation.

**Response:** Objections A, C, and D. Subject to these objections, admitted that the final Expanded Audit Report states the amounts recited. Disputed that SIPS owes them. (a) Plaintiffs' auditor found only 245.25 regular and 28.50 overtime hours identifiable as Local 1 plumbing work. It included 1,441.5 regular and 118 overtime "shop hours, on-site hours and prevailing wage NYC

hours" only because they were paid at the CBA wage rate. Brusseau Decl. ¶ 17. (b) Martino's shop hours were spent cleaning the shop, working on trucks, and loading and unloading trucks at SIPS' Suffolk County shop. His on-site hours were generally worked outside New York State. Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 4-11); Scott Decl. ¶ 9. (c) SIPS compared its payroll records with the audit. The audit charged hours that SIPS' records do not reflect, including out-of-state and shop hours, and charged Martino with hours in months for which SIPS' records show none. Scott Decl. ¶ 17, Exs. G-H. (d) The auditor later removed $27,199.49 as attributable to work outside New York State. Brusseau Decl. ¶ 27. (e) The audit charged overtime welfare contributions at twice the straight-time rate, contrary to Article IV(g). ECF 66-19, at 7; ECF 66-4, at 10-11. (f) SIPS paid McGregor's June-December 2020 contributions in February 2021: check no. 1389, for $6,688.15, went to the Welfare Fund with SIPS' February 5, 2021 letter, and check no. 1388, for $1,341.47, went separately to the Plumbers and Pipefitters National Pension Fund. Sausele Decl. ¶ 3, Ex. A. Of those payments, $2,917.93 was for September-December 2020, within the audit period. The Funds processed that payment. Their Statements of Employer Status dated September 28, 2021 and March 5, 2024 list invoices dated February 8, 2021 for interest and liquidated damages on SIPS' contributions for the periods ending June 27 through December 26, 2020. Scott Decl. ¶¶ 11-12, Exs. C, K. (g) The auditor charged Martino's hours as plumbing work only because "it could not be fully determined what Mr. Martino was doing with his hours," and wrote that he "only had shop hours in 2022." Kataev Decl. ¶ 13, Ex. K.

41. The Auditor noted that in discussions with SIPS, the employer contact stated that no benefits were reported for certain employees due to purported issues SIPS was having with the Funds' remittance system. *See* Brusseau Decl. ¶ 16. The Fund was never made aware of any issues with its remittance system during the Audit Period, either by SIPS or any other contributing employer, and only has a record of a failed login attempt by SIPS due to an incorrect password that was addressed the same day any time it occurred. The Funds received remittance reports

without issue from other contributing employers and from SIPS throughout the Audit Period. Salvatierra Decl., ¶ 29.

**Response:** Objections A, B, D, and F. The paragraph combines the auditor's notes, the Funds' knowledge, and other employers' experience. Subject to these objections, admitted that SIPS' employer contact told the auditor that no benefits were reported because of problems with the Funds' remittance system. Disputed that the Funds were never made aware of those problems. SIPS told the Funds' payroll auditor on October 28, 2020, the Welfare Fund on February 5, 2021, and the Joint Plumbing Industry Board on October 5, 2021, all in writing, that it could not remit through the Union's online system. Kataev Decl. ¶¶ 3-4, Exs. A-B; Sausele Decl. ¶ 3, Ex. A. The Funds' payroll auditor acknowledged receiving the October 28, 2020 letter ("Thank you for the documents"), and SIPS' counsel sent the October 5, 2021 letter to the Funds' counsel, who replied the next day. Kataev Decl. ¶¶ 11-12, Exs. I-J. SIPS' counsel repeated the point to the auditor on January 3, 2023, and the auditor replied that SIPS' MES agreement "most likely was the issue with paying benefits through the system." Kataev Decl. ¶ 13, Ex. K. On May 26, 2023, the auditor wrote that some of Martino's hours were hours "he could not report due to the iremit system." Kataev Decl. ¶ 14, Ex. L. And on August 31, 2023, the Funds' counsel acknowledged "problems relating to ISSI access experienced by SIPS." Kataev Decl. ¶ 15, Ex. M. Beginning in May or June 2020, SIPS tried for months to have McGregor and Martino added to its employee roster on that system, without success, and could not submit reports for their hours after May 2020. The Funds' portal later displayed, for both Martino and McGregor, "Our records do not show that this Employee has been added to your Employee roster." Scott Decl. ¶¶ 8, 15, Exs. E, J. Plaintiffs concede a failed login by SIPS. Salvatierra Decl. ¶ 29. Disputed that SIPS submitted remittance reports "without issue": SIPS remitted McGregor's June-December 2020 contributions by paper

check. Sausele Decl. ¶ 3, Ex. A; Scott Decl. ¶ 11. What other employers experienced is immaterial and is not within Salvatierra's personal knowledge of SIPS' account.

42. The Auditor created a report summarizing its findings of the 2018-2022 Audit ("Expanded Audit Report"). Brusseau Decl. ¶ 22; *id.*, Ex. 2; Salvatierra Decl. ¶ 30.

**Response:** Objections A and D. Subject to these objections, admitted that the auditor prepared a final report. Disputed that it covers "2018-2022." The Expanded Audit covers September 1, 2020 through December 31, 2022. ECF 66-19, at 1.

43. On August 12, 2025, after conducting the exit interview, S&P sent draft findings to SIPS. *See* Brusseau Decl. ¶ 19, Exs. 9, 10.

**Response:** Objection A. Subject to that objection, admitted that the auditor sent draft findings on August 12, 2025, after an exit interview. ECF 66-22; ECF 66-23. Disputed that the draft findings are accurate. SIPS' comparison of the draft hours with its payroll records shows that the audit charged out-of-state and shop hours, none of which constitute covered work under the CBA. Scott Decl. ¶ 17, Exs. G-H.

44. Receiving no exceptions to the draft findings, on or around August 26, 2025, S&P sent SIPS a preliminary audit report, providing 10 days from the date of the preliminary audit report to object in writing to the Auditor's findings. *See* Brusseau Decl. ¶ 20, Exs. 11, 12.

**Response:** Objections A, C, and D. "Receiving no exceptions" is a characterization, not a fact, and the record contradicts it. The report was sent on August 27, 2025 and allowed ten business days, not ten days. Subject to these objections, admitted that the auditor sent a revised preliminary report on August 27, 2025, requesting a response within ten business days. Kataev Decl. ¶ 9, Ex. G. Disputed that SIPS had raised no exceptions. The revised report extended the May 16, 2023 preliminary report to December 31, 2022, and SIPS had served written exceptions to the same hours on July 26, 2023. Kataev Decl. ¶ 7, Ex. E; ¶ 9, Ex. G. The auditor had told SIPS that "as auditors we do not accept affidavits on the audit," that an affidavit "would be something you would

bring to the fund in the dispute phase," and that "the funds will make the determination on Jay's hours." Kataev Decl. ¶¶ 13-14, Exs. K-L. SIPS did exactly that: the auditor forwarded SIPS' exceptions "to the Fund attorney and the Funds office for review" for the August 24, 2023 collection committee meeting, and the Funds' counsel acknowledged and rejected them on August 31, 2023. Kataev Decl. ¶¶ 14-15, Exs. L-M. The Collection Policy also permits the auditor to refer an employer's factual representations to the Union or the Collections Committee for evaluation. ECF 66-8, at 10-11, Art. IV, ¶ 3.

45. S&P received no written objections to the Auditor's findings. Brusseau Decl. ¶ 21.

**Response:** Objections A and D. Subject to that objection, admitted that the auditor received no written objection between August 27 and September 10, 2025. Kataev Decl. ¶ 9, Ex. G. Disputed that SIPS never objected. SIPS' July 26, 2023 written exceptions, with Martino's sworn affidavit, disputed the same shop and out-of-state hours, and the auditor recounts SIPS' explanation of Martino's shop work in its own declaration. Kataev Decl. ¶ 7, Ex. E; Brusseau Decl. ¶ 17. The auditor had told SIPS that it does "not accept affidavits on the audit" and forwarded SIPS' exceptions to the Funds and their counsel, who acknowledged receiving them and rejected them on August 31, 2023. Kataev Decl. ¶¶ 13-15, Exs. K-M. The Funds therefore had SIPS' written objections to the same hours two years before the revised preliminary report.

46. On September 12, 2025, S&P issued a final audit report to SIPS. *See* Brusseau Decl. ¶ 23, Exs. 2, 13; Salvatierra Decl. ¶ 31.

**Response:** Objection A. Subject to that objection, admitted that the auditor issued the final report on September 12, 2025. ECF 66-26. Disputed as to its findings for the reasons stated in response to ¶ 40.

47. Pursuant to the Collection Policies that govern the Funds, the cover letter transmitting the revised final Audit Report described in the preceding paragraph instructed SIPS to pay the entire amount within 10 days of the date of the letter. *See* Brusseau Decl., ¶ 24, Ex. 13.

**Response:** Objection A. Subject to that objection, admitted that the cover letter demanded payment within ten days. ECF 66-26. Disputed that the demand establishes the amount owed. See response to ¶ 40.

48. No payment was made towards the audit within 10 days of the date of the letter. *See* Salvatierra Decl. ¶ 32; *See* Brusseau Decl. ¶ 25.

**Response:** No objection. Admitted that SIPS paid nothing within ten days of the letter, while it disputed the findings. Further state that SIPS paid $12,727.60 by check dated December 15, 2025, and had paid the Funds for McGregor's June-December 2020 hours in February 2021. Scott Decl. ¶¶ 11, 18, Ex. I; Sausele Decl. ¶ 3, Ex. A.

49. From April 2, 2025 when the Parties entered the Stipulation for Production of Audit Documents for the Defendants to comply with the Expanded Audit through February 2, 2026, the Plaintiffs worked tirelessly to obtain Defendants' compliance with the fully executed agreed-upon stipulation. The final requirement of the parties' Stipulation for the Production of Audit Documents was met, in that payment of the undisputed amounts owed to Plaintiffs was made and confirmed received by the Plaintiffs, on February 2, 2026. *See* Richardson Decl. ¶ 17. On February 2, 2026, pursuant to the March 25, 2025 stipulation between the Parties, SIPS paid the undisputed amounts in the amount of $12,727.60. *See* Salvatierra Decl. ¶ 33.

**Response:** Objections B, E, and F. Richardson recounts events through others, the Stipulation is inadmissible except to enforce its terms, and "worked tirelessly" is argument. Subject to these objections, admitted that the Funds received SIPS' payment of $12,727.60 on or about February 2, 2026. Salvatierra Decl. ¶ 33. Disputed that SIPS paid on February 2, 2026: SIPS issued the check on December 15, 2025. Scott Decl. ¶ 18, Ex. I.

50. In April of 2026, the Auditors received additional documentation from Fund Counsel that was provided by SIPS' counsel that detailed the time activities of SIPS further. The Auditors reviewed this time detail to determine whether any findings could be removed from the Expanded Audit as findings that were attributable to hours of work performed outside the state

of New York and therefore outside the geographical jurisdiction of Covered Work under the applicable CBA. *See* Salvatierra Decl. ¶ 34; *See* Brusseau Decl. ¶ 26.

**Response:** Objection A. Subject to that objection, admitted. Further state that the time detail confirmed that hours the auditor had charged were worked outside New York State. Brusseau Decl. ¶¶ 26-27.

51. Pursuant to this review, the Auditors identified $27,199.49 of findings and related costs that could be removed from the Expanded Audit. *See* Salvatierra Decl. ¶ 35, Ex. 12; Brusseau Decl. ¶ 27.

**Response:** Objection A. Subject to that objection, admitted that the auditor removed $27,199.49. Disputed that the remaining findings are owed. The auditor removed only hours worked outside New York State. It did not remove the hours worked at SIPS' Suffolk County shop or the other hours that were not covered work. Brusseau Decl. ¶¶ 17, 26-27; Scott Decl. ¶¶ 9, 17, Exs. G-H; Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 6-8).

52. Therefore, the remaining amounts due to the Local 1 Funds pursuant to the Audit less amounts reduced and recovered are $158,553.96 consisting of: $69,017.32 in contributions owed to the Local 1 Funds, interest owed on the total Local 1 Funds contribution amount pursuant to the Audit, updated through October 12, 2026 and accounting for payments made to date, of $30,776.79, liquidated damages thereon of $13,803.46; delinquent contributions owed to the Union totaling $5,497.45, interest thereon totaling $2,450.10, and liquidated damages thereon totaling $1,099.49; and ASB-C findings of $6,386.31, lost earnings of $938.53, interest thereon of $2,351.78, and liquidated damages of $1,464.97; administrative fees of $2,000, and audit costs of $11,382.35; less the $12,727.60 already recovered and the $27,199.49 in findings removed from the Expanded Audit as being contributions and associated interest and liquidated damages attributable to hours of work performed outside the geographical jurisdiction of Local Union No. 1. *See* Salvatierra Decl. ¶ 36, Ex. 12. SIPS also owes the Local 1 Funds attorneys' fees of $51,312.50. *See* Richardson Decl. ¶ 27, Ex. 4.

**Response:** Objections A, C, and D. Subject to these objections, disputed. (a) The $158,553.96 already includes the $51,312.50 in attorneys' fees: Plaintiffs' summary totals $198,481.05, including those fees, before subtracting $12,727.60 and $27,199.49. ECF 66-16, at 1. The fees cannot be added again. (b) The contributions, interest, and liquidated damages rest on disputed hours. See response to ¶ 40. (c) Plaintiffs compute interest at 10% simple daily interest, and the

Welfare Fund Trust Agreement sets a different rate. ECF 66-16, at 2; ECF 66-5, at 26. (d) Plaintiffs do not show that the audit credited SIPS' February 2021 payments for McGregor's September-December 2020 hours, which totaled $2,917.93. Scott Decl. ¶¶ 11-12, Ex. C; Sausele Decl. ¶ 3, Ex. A.

**IV. [*sic*] Interest, Liquidated Damages, and Professional Fees and Costs**

> 53. When an employer fails to pay all contributions when due, including all amounts owed to the Local 1 Funds and all entities for which the Local 1 Funds act as a collections agent, the CBAs and Local 1 Fund Collection Policies impose interest at the rate of ten percent (10%) per annum (compounded annually), plus liquidated damages of twenty percent (20%) of the amount owing, plus all reasonable audit and accounting expenses, attorneys' fees, disbursements, and court costs. *See* Salvatierra Decl. ¶ 41, Ex. 2, Art. VI; Exs. 3-5, Art. VI, Sec. 6; Ex. 6(a), Art. II ¶ 6; Ex. 7(a), Art. III.B.2. Interest is calculated from the due date to the date of payment. *Id. at* Exs. 3-5, Art. VI. Further, the Funds are entitled to an assessment of an administrative fee of $100 for every instance in which an employer fails to submit contributions. *See id.* at Ex. 6, Art. II ¶ 6.

**Response:** Objections C and D. Subject to these objections, admitted that the cited instruments provide for interest, liquidated damages, audit expenses, attorneys' fees, costs, and administrative fees on delinquent contributions. Disputed that they uniformly impose interest at 10% per year compounded annually. The Welfare Fund Trust Agreement sets 12%, or double interest, in the Trustees' discretion, and Plaintiffs' schedule applies simple daily interest. ECF 66-5, at 26, Art. VI; ECF 66-16, at 2. Disputed that SIPS owes the underlying contributions. See response to ¶ 40.

> 54. Accordingly, calculated through October 12, 2026, SIPS is liable to the Local 1 Funds for interest on the delinquent contributions (absent interest on ASB-C findings) for the period September 1, 2020 through December 31, 2022, at the rate of ten percent (10%) per annum (compounded annually) for a total of $33,226.89 and liquidated damages calculated as twenty percent (20%) of the principal delinquency for liquidated damages totaling $14,902.95. *See* Salvatierra Decl. ¶ 42, Ex. 12.

**Response:** Objections A and D. Subject to these objections, disputed. The figures are calculated on disputed contributions, See response to ¶ 40, and Plaintiffs' own schedule shows simple daily interest, not interest "compounded annually." ECF 66-16, at 2.

55. Specifically, interest is calculated by multiplying the contributions due per month by the annual interest rate of ten percent (10%) as provided for in the CBA and Local 1 Fund Collection Policies and then dividing that figure by 365 to yield the daily interest rate. For example, for December 2021, the estimated contributions to the Local 1 Funds of $2,065.46 are multiplied by ten percent (10%) interest rate to yield a total yearly interest of $206.55. That figure is then divided by 365 to render the daily interest rate of $0.57. The daily interest rate is then multiplied by the number of days the contributions are late or have been paid late. Here, December 2021 contributions were due on January 20, 2022. Since December 2021 contributions remain outstanding, interest is calculated through the present date, October 12, 2026; therefore, December 2021 contributions are 1,726 days late. The daily interest of $0.57 multiplied by 1,726 days renders interest of $983.82 on December 2021 contributions. This calculation was conducted for each and every month that contributions were owed from September 1, 2020 through December 31, 2022 for the Local 1 Funds and the Union Assessments the Local 1 Funds act as collections agent for. As detailed above, the Local 1 Funds have recovered $12,727.60 in contributions to date. When amounts were received, they were applied to the oldest principal delinquent contributions and interest was calculated through the date payment was received for those contributions. Therefore, the amounts received from SIPS, as detailed in paragraph 33 of the Declaration in Support of Wendy Salvatierra, were applied to the contributions for September 2020 through a portion of December 2020 and as the amounts were received by the Funds on February 2, 2026, interest on those contributions was calculated through that date. The interest was calculated through the date of service of the Plaintiffs' Motion for Summary Judgment for any contributions that remain outstanding, including the remaining amounts owed for December 2020 contributions. *See* Salvatierra Decl. ¶ 43, Ex. 12.

**Response:** Objection D. Subject to that objection, admitted that Plaintiffs' schedule computes simple daily interest at 10% per year and applied the $12,727.60 to the oldest contributions. ECF 66-16, at 2. Disputed that this method is "compounded annually," as ¶¶ 53-54 assert. Disputed that the principal is owed. Plaintiffs' own example month shows the dispute: for December 2021, SIPS' records reflect 11.5 hours for Martino, while the audit charged him with 104 regular and 26.75 overtime hours. Scott Decl. ¶ 17, Ex. H.

56. As set forth in the CBA, the Collection Policies, and in Section 502(g)(2) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in collecting any unpaid contributions from a delinquent employer. Salvatierra Decl. ¶ 44, Ex. 2, Art. VI; Exs. 3-5, Art. VI, Sec. 6; Ex. 7(a), ¶ 6; Ex. 8(a), Art. III.B.2.

**Response:** Objection C. Subject to that objection, admitted that ERISA § 502(g)(2), the MES Agreement, and the Collection Policies provide for recovery of reasonable attorneys' fees and

costs. Disputed that Plaintiffs are entitled to them, because the contributions claimed are disputed. See response to ¶ 40.

> 57. Plaintiffs have incurred reasonable attorneys' fees and costs of $51,312.50 in connection with collecting the delinquent contributions underlying this action. *See* Richardson Decl., ¶¶ 18-21; 23-27; Ex. 4.

**Response:** Objection C. Subject to that objection, admitted that Plaintiffs claim $51,312.50. Disputed that the amount is recoverable in addition to the $158,553.96, which already includes it. ECF 66-16, at 1; Richardson Decl. ¶ 27.

> 58. Discovery in this case has been extensive and nearly every step of the case has been delayed or drawn out unnecessarily by the Defendants and or their counsel. Richardson Decl., ¶ 18.

**Response:** Objections C and F. Subject to these objections, disputed. The paragraph states argument, not fact. Discovery has not closed. It was adjourned *sine die* on October 1, 2026, after the parties jointly asked to defer the remaining deposition pending settlement efforts. ECF 64, at 1; Kataev Decl. ¶ 17.

> 59. Throughout the litigation, counsel for SIPS has been dilatory in responding to the Plaintiffs and to the Court, in at least one instance forcing the Court to issue a show cause Order. Plaintiffs' counsel has been forced to follow up countless times and seek Court intervention on multiple occasions due to violated court orders or a failure to obtain Defendants' response or consent to some of the most basic filings in this case. This behavior created unnecessary disputes and further motions practice that was unwarranted in this case, especially considering the proportional needs of the case. Richardson Decl., ¶ 19.

**Response:** Objections B, C, and F. Subject to these objections, disputed. The paragraph is argument about counsel's conduct and is immaterial to any element of Plaintiffs' claims. Admitted only that the docket reflects this Court's orders.

> 60. As shown on the docket, Plaintiffs incurred unnecessary legal fees in this case that were reasonable given the extent of motion practice and discovery Plaintiffs were required to

participate in to obtain Defendants' compliance and participation throughout this litigation. Richardson Decl., ¶ 20.

**Response:** Objections C and F. Subject to these objections, disputed. The paragraph contradicts itself, asserting that "unnecessary" fees were "reasonable," and states argument, not fact. The fees are already included in Plaintiffs' $158,553.96 demand. ECF 66-16, at 1.

## V. Total Amount Owed by Defendant to Plaintiff

61. Based on the Audit, interest, liquidated damages calculations, and Plaintiffs' attorneys' fees and costs incurred in connection with this action, Defendant owes Plaintiff the sum of at least $158,553.96 , consisting of: a. Remaining contributions owed to the Local 1 Funds totaling $69,017.32 for the period September 1, 2020 through December 31, 2022; b. Interest on the total Fund contribution delinquency at the rate of ten percent (10%) per annum for interest totaling $30,776.79; c. Liquidated damages of twenty percent (20%) of the total Fund contribution delinquency for liquidated damages totaling $13,803.46; d. Delinquent contributions to the Union owed between September 1, 2020 through December 31, 2022 totaling $5,497.45; e. Interest on the total Union contribution delinquency at the rate of 10% per annum for interest totaling $2,450.10; f. Liquidated damages of twenty percent (20%) of the total Union delinquency for liquidated damages totaling $1,099.49; g. ASB-C delinquencies of $6,386.31; h. Lost earnings of $938.53; i. Interest on the ASB-C findings and lost earnings of $2,351.78 and liquidated damages on same of $1,464.97; j. Audit costs of $11,382.35; k. Attorneys' fees and costs totaling $51,312.50 as detailed in the Declaration of Rebecca W. Richardson; l. Administrative Fees of $2,000; m. Less $12,727.60 in amounts already received, and $27,199.49 in contributions and associated interest and liquidated damages removed from the audit findings due to being assessed on work later shown to be performed outside of the geographical jurisdiction of the Union; n. Additional interest on the delinquent contributions at the rate of ten percent (10%) per annum from October 12, 2026, through the date of judgment; o. Post-judgment interest at the statutory rate; and p. Any other relief the Court deems just and proper. *See* Brusseau Decl., ¶ 27; *id.*, Exs. 2; Salvatierra Decl., ¶ 36, 45; *id.*, Ex. 12; Richardson Decl., ¶¶ 12, 23-27; *id*, Ex. 4.

**Response:** Objections A, C, and F. Subject to these objections, disputed for the reasons stated in response to ¶¶ 40, 52, and 54-57. The $51,312.50 in item k is already included in the $158,553.96 total. The interest is simple, not compounded. The hours underlying items a through j include shop, on-site, and out-of-state hours that are not covered work. SIPS' February 2021 payment for September-December 2020 must be credited. ECF 66-16, at 1-2; Brusseau Decl. ¶ 17; Scott Decl. ¶¶ 11, 17, Exs. G-H; Sausele Decl. ¶ 3, Ex. A.

**Additional material facts supporting Defendants' anticipated cross-motion**

62. SIPS executed the MES renewal in November 2019 for an agreement effective October 1, 2019 through December 31, 2022. The renewal's recognition language refers to present and future job sites within Local 1's jurisdiction. ECF 66-3, at 1; ECF 66-4, at 4, Art. I, § 2.

63. Article I, § 1 of the MES agreement states: "This Agreement applies to Mechanical Equipment and Service Division work performed in the five counties which comprise the City of New York and any reference to Journeymen or Helpers shall mean, unless otherwise indicated, Journeymen and Helpers who perform Mechanical Equipment and Service Division work." The bargaining-unit provision identifies the same five-county jurisdiction. Article I, § 6 separately refers to "A" Building Trades and "Oil Trades" agreements when specified New Construction or Pump and Tank installations are performed. ECF 66-4, at 4.

64. Martino worked at SIPS' warehouse in Bohemia, New York, in Suffolk County, when not traveling out of state or working at New York job sites. His shop work included cleaning the shop, working on trucks, and loading and unloading trucks. He performed no plumbing work at that warehouse. Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 6-8); Scott Decl. ¶ 9.

65. Martino also traveled to job sites frequently located outside New York State. His pay stubs distinguished types of hours; his affidavit identifies "Shop Hours" generally as the warehouse work described in paragraph 64 and "On Site Regular" generally as work outside New York State. Kataev Decl. ¶ 7, Ex. E (Martino Aff. ¶¶ 4-5, 9-11). SIPS' payroll register codes hours paid under the Local 1 agreements separately from shop, on-site, driver, and prevailing-wage hours. Scott Decl. ¶ 14, Ex. D. Article II, Rule 7 of the MES agreement describes the trade work and its exclusions. ECF 66-4, at 5-6.

66. In calculating its expanded findings, the auditor included a group of 1,441.5 regular hours and 118 overtime hours recorded as shop, on-site, and NYC prevailing-wage hours. The stated basis included payment at a plumber wage rate and the auditor's conclusion that sufficient explanatory documentation had not been provided. That combined group is not identified as exclusively shop hours. Brusseau Decl., ECF 66-17, ¶ 17; expanded final audit, ECF 66-19, at 6. The Welfare Trust provides that, where records are insufficient to determine covered hours, an employee who performed covered work is presumed to have spent the entire time doing so, unless other records establish the hours. ECF 66-5, Art. VI, § 5, at 24-25.

67. After reviewing additional time detail in April 2026, Plaintiffs' auditor identified work performed outside New York State as outside the geographical jurisdiction of covered work under the CBA. Brusseau Decl. ¶ 26; Salvatierra Decl., ECF 66-2, ¶ 34.

68. The auditor identified reductions of $14,328.70 in contribution principal, $5,200.65 in related interest, $2,624.58 in related liquidated damages, $3,322.07 in ASB-C findings, $1,059.07 in ASB-C interest, and $664.42 in ASB-C liquidated damages, totaling $27,199.49. Brusseau Decl. ¶ 27. Subtracting the conceded principal reduction from $74,514.77 yields $60,186.07 before other exclusions or payment allocation.

69. The expanded audit applies the classification "Plumber - AJ 1000." For January-June 2021, its summary lists 124.25 regular hours with $2,460.15 in welfare charges and eight overtime hours with $316.80 in welfare charges: $19.80 and $39.60 per hour, respectively. It lists $1,248.71 and $160.80 in employer 401(k) charges for those respective hours. ECF 66-19, at 7. MES Article IV(g) provides for straight-time overtime fringe contributions except the specified Target or United Association National Residential Agreement jobs, for which it provides time and one-half. ECF 66-4, at 10-11.

70. SIPS signed an Agreement for Equipment Installation Work dated September 28, 2020 identifying 3119 Jerome Avenue, Bronx, with job duration September 1-30, 2020. The document states that the contractor is not required to participate in the Local 1 401(k) Plan and that amounts otherwise payable to that plan shall be included in each employee's gross pay. It lists $21.71 for regular Local 1 fringe hours and $32.57 for overtime fringe hours. The copy's Union business-agent signature line is blank. Jeffrey Sausele signed it for a Metropolitan Transportation Authority project on which SIPS was then working, and SIPS' Controller sent a copy to SIPS' counsel the next day. Scott Decl. ¶ 6, Ex. B.

71. The expanded audit seeks $21,619.30 in employer 401(k) contributions, $42,528.26 in welfare contributions, $3,717.70 in trade education contributions, $1,152.06 in promotion contributions, $4,510.11 in union assessment, $824.40 in organizing-fund charges, and $162.94 in PAC charges before later geographic reductions and payment credits. ECF 66-19, at 7, 27.

72. The National Pension Fund participation appendix addresses that named fund and includes a contribution provision for each hour or portion of an hour for which a covered employee is paid or entitled to payment for duties for the employer. The hourly categories listed in paragraph 71 do not include a National Pension Fund contribution. ECF 66-4, at 18-19; ECF 66-19, at 7, 27.

73. MES Article II, Rule 3 requires a monthly shop card showing fringe payments for the previous month. Rule 9 contains separate on-call, call-out, travel, and return-of-vehicle compensation provisions. Article IV distinguishes employer fringe contributions from employee 401(k) deferrals and payments to employee accounts. Article X conditions union-assessment deductions on individual written authorization. Article II, Rule 4 calls the political-fund deduction voluntary and provides an authorization requirement. ECF 66-4, at 5-6, 9, 13.

74. Plaintiffs' damages summary totals $198,481.05 before subtracting $12,727.60 already received and $27,199.49 in geographic exclusions, leaving $158,553.96. The $198,481.05 includes $51,312.50 in attorneys' fees. ECF 66-16, at 1. Accordingly, the $158,553.96 figure also already includes that fee request.

75. Plaintiffs confirm receiving the $12,727.60 payment on February 2, 2026. Their interest schedule describes applying it to the oldest outstanding contributions and stopping interest on those amounts at the payment date. Salvatierra Decl. ¶¶ 33, 43; ECF 66-16, at 2. The expanded final audit separately lists $18,067.33 as additional outstanding delinquencies on file with the Fund Office. ECF 66-19, at 29.

76. Plaintiffs seek $2,000 in administrative fees and $11,382.35 in audit costs in the current damages summary. ECF 66-16, at 1. The fringe-benefit collection policy's audit-cost provision uses the lesser of two percent of total payroll for covered employees for the audited period or $25,000. ECF 66-8, Art. IV, ¶ 8. The MES agreement also contains a reasonable audit/accounting-cost provision. ECF 66-4, Art. VI.

77. The audit-production stipulation provides that the employer will pay any undisputed contributions determined due, preserves rights and defenses, disclaims wrongdoing and admissions, and restricts evidentiary use to enforcement of its terms. It also preserves the December 31, 2022 termination and disclaims reinstatement of a CBA through the agreed audit and reporting acts. ECF 66-30, ¶¶ 1-4. These provisions are identified to enforce the stipulation's reservation and use restriction.

78. The collection policy gives the employer a preliminary-audit objection and review procedure, followed by a final report, a payment demand, and possible litigation. ECF 66-8, at 10-11, Art. IV, ¶¶ 3-7. Counsel's October 5, 2021 letter to the Joint Plumbing Industry Board

reports remittance-system problems and an earlier payment submission, namely SIPS' February 2021 payment of McGregor's contributions. SIPS' counsel sent a copy of that letter to the Funds' counsel the same day, and she replied the next day. Kataev Decl. ¶¶ 4, 12, Exs. B, J; Sausele Decl. ¶ 3, Ex. A.

79. Bond No. 810002719 dated July 1, 2020 states a $7,000 penal sum and that the surety's aggregate liability for all or any defaults shall not exceed the bond's penalty. The rider changes the amount to $21,000 effective February 18, 2021 and preserves other terms. The bond's cancellation provision preserves obligations accrued before cancellation becomes effective. ECF 66-12, at 1-2; ECF 66-13, at 1.

80. The parties' September 24, 2026 joint letter describes the remaining SIPS corporate deposition and their request to defer it pending settlement efforts. ECF 64, at 1. The October 1, 2026 Order sets a December 7, 2026 settlement conference and adjourns the discovery-completion deadline sine die, with a new completion proposal if settlement fails. Kataev Decl. ¶ 17. These procedural facts concern the proposed briefing schedule and possible Rule 56(d) relief.

81. Beginning in May or June 2020, SIPS tried for months to have McGregor and Martino added to its employee roster on the Funds' online remittance system, without success, and could not submit reports for their hours after May 2020. Scott Decl. ¶ 8, Ex. J.

82. When SIPS tried to remit for Martino and McGregor, the Funds' online portal showed "No data available in table" and "Our records do not show that this Employee has been added to your Employee roster." Scott Decl. ¶ 15, Ex. E.

83. SIPS told the Funds' payroll auditor (October 28, 2020), the Welfare Fund (February 5, 2021), and the Joint Plumbing Industry Board (October 5, 2021), in writing, that it had been unable to remit through the Union's online system. SIPS' counsel repeated the point to

the auditor on January 3, 2023. Kataev Decl. ¶¶ 3-4, 11-13, Exs. A-B, I-K; Sausele Decl. ¶ 3, Ex. A.

84. By letter dated February 5, 2021, SIPS sent the Welfare Fund a check for $6,688.15 for McGregor's contributions for June through December 2020, and SIPS separately sent the Plumbers and Pipefitters National Pension Fund a check for $1,341.47 for the same period. Sausele Decl. ¶ 3, Ex. A. Of those payments, $2,917.93 was attributable to September through December 2020. Scott Decl. ¶ 11.

85. The Funds' March 5, 2024 Statement of Employer Status for SIPS lists invoices dated February 8, 2021 for interest and liquidated damages on contributions for the periods ending June 27, 2020 through December 26, 2020. Scott Decl. ¶ 12, Ex. C. The Funds' September 28, 2021 Statement of Employer Status lists the same invoices for the periods ending June 27, July 25, August 29, October 31, November 28, and December 26, 2020. Scott Decl. ¶ 11, Ex. K.

86. SIPS' payroll register for July through December 2022 records 22.50 regular and 1.50 double-time hours for Martino under "Local 1 Plmb" codes and 34.00 hours for McGregor under "Local 1 MES Regular," matching the 24 hours and 34 hours SIPS identified for those employees for that period. For 2022, the same register records 801.50 "Shop Regular" hours for Martino. Scott Decl. ¶¶ 14, 16, Exs. D, F.

87. SIPS compared the hours its records reflect for Martino and McGregor for each month from September 2020 through December 2022 with the hours the audit charged. The audit charged Martino with hours in months for which SIPS' records reflect none, including every month from January through October 2022. Scott Decl. ¶ 17, Ex. H.

88. By email dated April 10, 2024, SIPS' counsel told the Funds' auditor that SIPS had terminated the CBA effective December 31, 2022 and would not produce documents for 2023. Kataev Decl. ¶ 8, Ex. F.

89. On August 27, 2025, the Funds' auditor wrote that "[t]he audit period was extended to 12/31/2022 due to the abrogation." Kataev Decl. ¶ 9, Ex. G.

90. In April 2024, the Funds' benefit office asked SIPS to submit remittance reports for January through March 2024, and SIPS responded that it had cancelled its contract with the Union years earlier. Scott Decl. ¶ 13.

91. SIPS paid the Funds $12,727.60 by check dated December 15, 2025. Scott Decl. ¶ 18, Ex. I.

92. On October 28, 2020, SIPS' counsel emailed the letter annexed as Kataev Decl. Ex. A to the Funds' payroll auditor, Darcell Burrows of Marshall and Moss Payroll Compliance Services LLC, who replied the next morning: "Thank you for the documents." Kataev Decl. ¶¶ 3, 11, Exs. A, I.

93. On October 5, 2021, SIPS' counsel emailed a copy of the letter annexed as Kataev Decl. Ex. B to the Funds' counsel, Adrianna Grancio of Virginia & Ambinder, LLP, who replied the next day. Kataev Decl. ¶¶ 4, 12, Exs. B, J.

94. On January 3, 2023, SIPS' counsel wrote to the Funds' auditor, Jeffrey Cascio of Schultheis & Panettieri, LLP, that "no benefits or reportage of [Martino's] hours were capable of being made due to Local 1's defective system." Cascio replied that day: "We believe part of the issue is that Jay Martino is a Local 1 plumber that is a building trade plumber but Spray in Place had an MES agreement signed in 2019 which most likely was the issue with paying benefits through the system." Kataev Decl. ¶ 13, Ex. K.

95. On February 7, 2023, the auditor wrote: "Since it could not be fully determined what Mr. Martino was doing with his hours, the decision was made to charge these hours as If he was doing plumbing work." Kataev Decl. ¶ 13, Ex. K.

96. On March 9, 2023, the auditor wrote that "[i]t looks like Jay Martino only had shop hours in 2022," that "[w]e do not want to charge on Jay Martino's hours," and that "any sort of backup you can get us on his hours and what he was doing would help." Kataev Decl. ¶ 13, Ex. K.

97. On March 21, 2023, the auditor wrote that "as auditors we do not accept affidavits on the audit" and that an affidavit "would be something you would bring to the fund in the dispute phase." Kataev Decl. ¶ 13, Ex. K.

98. On May 26, 2023, the auditor wrote that "the hours for Jay Martino are mostly to do with shop hours some of those hours are for hours worked as a plumber that he could not report due to the iremit system," and that "the funds will make the determination on Jay's hours." Kataev Decl. ¶ 14, Ex. L.

99. On June 27, 2023, the auditor wrote that at the plumbers committee meeting the day before, "Spray in Place was granted 30 days to review the audit before we finalize it," through July 26, 2023. Kataev Decl. ¶ 14, Ex. L.

100. On August 2, 2023, the auditor wrote that it had sent SIPS' July 26, 2023 exceptions "to the Fund attorney and the Funds office for review since we are not able to accept the affidavit in this office," and that the matter would "be brought up in the next collection committee meeting on 8/24." Kataev Decl. ¶ 14, Ex. L.

101. On August 31, 2023, the Funds' counsel wrote that the Trustees had found the Martino Aff. "insufficient to warrant revision to the audit findings" and asked for "documents

detailing the location, type, and scope of work performed by Martino for the hours contested." The same email stated that "problems relating to ISSI access experienced by SIPS were solved immediately upon notice." Kataev Decl. ¶ 15, Ex. M.

102. On April 27, 2023, the Funds' Operations Manager, Wendy Salvatierra, wrote to SIPS that "Spray in Place is seeking abrogation from the CBA's with Local 1" and that, "[a]s part of that process, a closeout audit was conducted." Scott Decl. ¶ 19, Ex. L.

103. In June 2020, SIPS submitted remittance reports through the Funds' online system for the report periods ending December 28, 2019 through May 30, 2020, each reporting no hours. Scott Decl. ¶ 8, Ex. J.

104. On July 7 and 13, 2022, SIPS' insurance broker described Bond No. 810002719 as "coming up for renewal 10/7/22" and as a "Wage and Welfare bond for 21,000. Plumbers local Union # 1." Scott Decl. ¶ 20, Ex. M.

Dated: Jamaica, New York
November 2, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

_/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*